UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. CHRISTIANSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SPECTRUM PHARMACEUTICALS, INC., THOMAS J. RIGA, FRANCOIS J. LEBEL, NORA E. BRENNAN,<br><br>Defendants. | Case No. 1:22-cv-10292 (VEC)<br><br>Consolidated with<br>Case No. 1:22-cv-10677 (VEC);<br>Case No. 1:23-cv-00767 (VEC)<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**LEAD PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan
Jeffrey P. Campisi
Brandon Fox
800 Third Avenue, 38th Floor
New York, NY 10022
T: (212) 687-1980
F: (212) 687-7714
rkaplan@kaplanfox.com
jcampisi@kaplanfox.com
bfox@kaplanfox.com

Kathleen A. Herkenhoff
(admitted *pro hac vice*)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
T: (415) 772-4700
F: (415) 772-4707
kherkenhoff@kaplanfox.com

*Lead Counsel for Lead Plaintiff Steven B. Christiansen and the Proposed Class*

Dated: October 19, 2023

Defendants' October 6, 2023 reply brief ("Reply Brief"), declaration and exhibits (ECF Nos. 84, 85 and 85-1 to 85-4), raise new arguments and assertions for the first time. As explained below, these arguments mischaracterize and ignore the facts alleged in the Complaint, and improperly seek inferences in Defendants' favor based on arguments that have no factual or legal support.

### A.   The Individual Defendants' Purported Increase in Spectrum Holdings Does Not Undermine an Inference of Scienter

Defendants assert that the Complaint does not allege scienter as to Defendants Thomas J. Riga ("Riga"), Francois J. Lebel ("Lebel"), and Nora E. Brennan ("Brennan") (the "Individual Defendants"), based on motive and opportunity because they "all substantially increased their stock holdings during the Class Period." ECF No. 84, at 7.  Defendants' argument ignores that the Individual Defendants' purported "increases" raised in the Reply Brief were not due to purchases of Spectrum common stock on the open market in which they spent their own funds, but rather were awards of restricted stock units ("RSUs") that none of the Individual Defendants could sell during the Class Period.  When this context is considered, these facts do not undermine the strong inference of scienter alleged in the Complaint.

As a threshold matter, the Form 4s that Defendants cite in support of their argument do not support the facts that Defendants assert in the chart on page 8 of the Reply Brief (ECF No. 84 at 12).  The chart lists "Holdings (September 22, 2022)," however, the underlying Form 4s that Defendants cite as support are dated March 2022, April 2022 and June 2022.  ECF Nos. 71-22, 71-23, 85-4.  There is nothing in the record that substantiates the Individual Defendants' purported holdings as of "September 22, 2022" offered in these extrinsic documents.  Indeed, the Form 4s provided in ECF Nos. 71-22 and 71-23 do not show the holdings of Lebel and Brennan as of March 17, 2022.  For these reasons alone, the Court should reject this "holdings" argument.

Assuming, *arguendo*, the Court considers this factually unsubstantiated argument, Defendants ignore that the purported increases in Spectrum "holdings" were not open market purchases in which the Individual Defendants expended their own funds, but rather were awards of RSUs for which they paid nothing. *See* ECF Nos. 71-22, at 3, 71-23, at 2, 85-4, at 3. Each of the Form 4s that Defendants cite in support of their argument state, in essence, that the holdings increases were due to acquisitions of RSUs, not open market purchases:

> The restricted stock unit grant was approved by Spectrum Pharmaceuticals, Inc.'s ("Spectrum") board of directors on January 27, 2022, subject to stockholder approval of the Amended and Restated 2018 Long-Term Incentive Plan (the "Plan") under which the restricted stock unit was granted. Spectrum's stockholders approved the Plan on June 21, 2022.

*See* ECF Nos. 71-22, at 3, 71-23, at 2, 85-4, at 3.

Moreover, Defendants fail to mention in the Reply Brief that the RSUs that the Individual Defendants acquired could not have been sold during the Class Period. According to Spectrum's Amended and Restated 2018 Long-Term Incentive Plan (the "Plan"), which is appended to its June 2022 Annual Report to shareholders, the RSUs that the Individual Defendants acquired in June 2022 could not be sold for 12 months, long after the end of the Class Period.[1]

Moreover, Defendants' chart understates the percentage of Spectrum common stock that Lebel and Brennan sold during the Class Period. For example, if the RSUs awarded during the Class Period are excluded from the Spectrum "holdings" of Lebel and Brennan as of March 17, 2022, Lebel sold over 6% of his shares during the Class Period (15,335 shares sold divided by

---

[1] The Plan is set forth at Appendix A to the Schedule 14A filed by Spectrum on April 27, 2022 with the SEC (the "Proxy"), available at: https://www.sec.gov/Archives/edgar/data/831547/000083154722000022/a2022proxy.htm (last visited October 16, 2022). As set forth at page 96 of the Proxy, in Section 6(g)(viii) of Appendix A, awards under the Plan were subject by default to a one-year vesting period from the date of the grant.

255,085), assuming the 255,085 is a correct opening balance at the start of the Class Period. *See* Reply Brief at 8 (ECF No. 84 at 12). For similar reasons, Brennan's percentage of stock sold asserted in the Reply Brief is understated. When RSUs are excluded, Brennan sold over 12% (3,569 shares sold divided by 29,277). *See id.* Yet, the percentage of sales is even higher if the RSUs that the 2022 Proxy indicates were not vested as of April 8, 2022 (Proxy at page 11) are excluded. When restricted and unvested holdings (identified in the Proxy at page 11) are excluded from the opening Class Period balances, Lebel sold over 14% of his shares (15,335 out of 109,342 shares) and Brennan sold nearly 24% of her shares during the Class Period (3,569 out of 15,000 shares). The conflicting analyses raise fact disputes that should not be considered at the motion to dismiss stage.

Further, in *In re Advance Auto Parts, Inc., Securities Litigation*, 2020 WL 599543, at *9 (D. Del. Feb. 7, 2020), the court—largely relying on authority from courts in Second Circuit—rejected the argument that the acquisition of stock through compensation plans, as Defendants Riga, Lebel and Brennan appear to have done, negates scienter. As explained in *Advance Auto Parts*, the inference based on the acquisition of stock as part of an executive's compensation package "could cut the other way when the stock is awarded based on 'achieving certain predetermined performance conditions,' as some of the stock here was." *Advance Auto Parts, Inc. Sec. Litig.*, 2020 WL 599543, at *9. The inference that stock purchases negate scienter is "the intuition that a defendant would not sink his own ship." *Id*. at *9. However, when the transactions are not open market "purchases," as is the case here with the Individual Defendants, the rationale does not apply. *Id*.

> **B.   Defendants Improperly Seek Factual Inferences in Their Favor**

In the Reply Brief, Defendants make a new argument that Defendants' alleged false and misleading representations that "Patients are being randomized," alleged in paragraphs 13, 24, 89,

3

125, 126, 138, 140 of the Complaint, did not represent to investors that Spectrum was at that time enrolling patients in the PINNACLE trial because, in Defendants' view, the statements referred to the design of the PINNACLE Study, rather than patient enrollment:

> Spectrum's repetition of the same description over several months confirms it was merely describing the study's design. And Spectrum used the same words to describe the study before the ODAC while discussing the fact that no patients had been enrolled. (*See* Ex. 25 at 63:7-16.).

ECF No. 84, at 9 (page 5 of the Reply Brief) (footnote omitted).

Defendants' new argument ignores that during the ODAC meeting *after* Lebel repeated the representation that "Patients are being randomized" (Ex. 25, at 63:13-14), a member of the ODAC panel challenged Lebel's assertion, which further highlights the false and misleading nature of Lebel's statement that "patients are being randomized":

> 114. During the ODAC meeting, a member of the ODAC panel (a clinical investigator/thoracic oncologist from the National Cancer Institute) asked Defendant Lebel "[i]s the confirmatory trial really underway? . . . the FDA documents seem to indicate that it's much delayed, but [your] discussion seems to suggest it's well under way, although patients are not enrolled. Where is that at this point?"
>
> 115. In response, Defendant Lebel stated "this study is very much underway, **and we acknowledge there are no patients right now** . . . we never expected patients at this stage, and we're on track."

(Emphasis in original); *see also* Ex. 25, ECF No. 85-2: at 109:3-110:21.

As alleged in the Complaint, Lebel's admission at the end of the Class Period that there "are no patients" was made at the September 22, 2022 ODAC meeting. Compl., ¶35. As detailed in the Opposition, in May and August 2022 the Individual Defendants made, or caused Spectrum to make, representations to investors that patients were enrolling in the PINNACLE Study ("Patients are being randomized"), when in fact no patients had enrolled (and none ever did). ECF No. 75 at 17-21 (Opposition at 10-14). Defendants' assertion that their reading of the alleged false statements alleged in the Complaint is superior to Lead Plaintiff's is contrary to the law in the

4

Second Circuit. *See IWA Forest Ind. Pen. Plan v. Textron Inc.*, 14 F.4th 141, 146-48 (2d Cir. 2021) (stating "District Court in effect required IWA 'to show that [its] reading was superior to the court's own benign reading' of those statements—a requirement we have described as error."). Accordingly, the Court should reject Defendants' argument that their interpretation of the alleged misrepresentation that "Patients are being randomized" is superior to the allegations in the Complaint.

## CONCLUSION

For the reasons set forth above and in Lead Plaintiff's opposition brief (ECF No. 75), Defendants' motion should be denied in its entirety.

Dated: October 19, 2023

**KAPLAN FOX & KILSHEIMER LLP**

*/s/   Jeffrey P. Campisi*
Robert N. Kaplan
Jeffrey P. Campisi
Brandon Fox
800 Third Avenue, 38th Floor
New York, NY 10022
T:  (212) 687-1980
F:  (212) 687-7714
rkaplan@kaplanfox.com
jcampisi@kaplanfox.com
bfox@kaplanfox.com

Kathleen A. Herkenhoff (admitted *pro hac vice*)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
T: (415) 772-4700
F: (415) 772-4707
kherkenhoff@kaplanfox.com

*Lead Counsel for Lead Plaintiff Steven B. Christiansen and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I, Jeffrey P. Campisi, hereby certify that, on October 19, 2023, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

*/s/ Jeffrey P. Campisi*
Jeffrey P. Campisi
