UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STEVEN B. CHRISTIANSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SPECTRUM PHARMACEUTICALS, INC., THOMAS J. RIGA, and FRANCOIS J. LEBEL,<br><br>    Defendants. | Case No. 1:22-cv-10292 (VEC) (Consolidated) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISQUALIFY LEAD PLAINTIFF STEVEN B. CHRISTIANSEN
AND FOR A STAY OF PROCEEDINGS PENDING APPOINTMENT OF A
SUBSTITUTE LEAD PLAINTIFF**

**BAKER BOTTS L.L.P.**

Kevin M. Sadler (admitted *pro hac vice*)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Tel: (650) 739-7500

Scott D. Powers (admitted *pro hac vice*)
401 South 1st Street, Suite 1300
Austin, TX 78704-1296
Tel: (512) 322-2678

James J. Beha II
John B. Lawrence
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 408-2500

*Counsel for Defendants Spectrum
Pharmaceuticals, Inc., and Thomas J. Riga,
Francois J. Lebel*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................................................ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

    I.   THE COURT SHOULD DISQUALIFY CHRISTIANSEN FROM SERVING AS LEAD
        PLAINTIFF........................................................................................................................ 5

    II.  THE CASE SHOULD BE STAYED PENDING APPOINTMENT OF A NEW LEAD
        PLAINTIFF........................................................................................................................ 6

CONCLUSION......................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Baan Co. Sec. Litig.*,
    2002 WL 32307825 (D.D.C. July 19, 2002)................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
    214 F.R.D. 117 (S.D.N.Y. 2002) ................................................................7

*In re Neopharma, Inc. Sec. Litig.*,
    2004 WL 742084 (N.D. Ill. Apr. 7, 2004) ................................................................7

*In re Nutanix Inc. Sec. Litig.*,
    2021 WL 783579 (N.D. Cal. Mar. 1, 2021)................................................................3, 7

*In re NYSE Specialists Sec. Litig.*,
    240 F.R.D. 128 (S.D.N.Y. 2007) ................................................................5, 6

*In re Oxford Health Plan Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................5

*In re Snap Inc. Sec. Litig.*,
    394 F. Supp. 3d 1156 (C.D. Cal. 2019) ................................................................6, 7

*In re Tarragon Corp. Sec. Litig.*,
    2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) ................................................................7

*In re Terayon Commc'ns Sys. Inc. Sec. Litig.*,
    2004 WL 413277 (N.D. Cal. Feb. 23, 2004) ................................................................6

*Plumlee v. Pfizer, Inc.*,
    2014 WL 4275553 (N.D. Cal. Aug. 29, 2014) ................................................................6

*Reese v. Malone*,
    2015 WL 1526567 (W.D. Wash. Apr. 3, 2015)................................................................7

*Roundtree v. Cincinnati Bell, Inc.*,
    90 F.R.D. 7 (S.D. Ohio 1979)................................................................6

STATUTES

15 U.S.C. § 78u-4 ................................................................5

OTHER AUTHORITIES

H.R. Rep. No. 104-369 (1995), reprinted in 1996 U.S.C.C.A.N. 730................................................................5

ii

**INTRODUCTION**

Defendant Spectrum Pharmaceuticals recently learned facts that render Court-appointed Lead Plaintiff Steven Christiansen incapable of serving as a representative for the alleged class. Accordingly, Spectrum moves to disqualify Mr. Christiansen from serving as lead plaintiff and to stay proceedings in this action until the Court appoints a substitute lead plaintiff.

Two weeks ago (on October 19, 2024), Spectrum and its counsel learned that Mr. Christiansen had sent multiple emails to a third-party investor relations consulting firm that provides consulting services to Spectrum's parent company, Assertio Holdings, discussing this action. In these emails, Mr. Christiansen characterized confidential settlement communications between the parties during mediation and asked the IR firm to arrange a "phone conference" between Christiansen and "Assertio Management" to "work out the details" of a settlement to allow "The Columbine Commission" to "recover[] [its] working capital." *See* Exs. A & B.

According to a website that Mr. Christiansen apparently maintains, Mr. Christiansen formed the "Columbine Commission" (he says he modeled it on the Warren Commission) to expose an alleged conspiracy "to hide the truth" about the "events leading up to and afterwards of The Columbine High School Massacre," including "that the Denver Colo. [a]nd Reno, Nv. Office of the DEA was involved." Mr. Christiansen says this conspiracy involved, among other things, a "campaign of multiple malicious prosecutions against Steven B Christiansen;" a "DEA entrapment drug ring in Littleton Colo.;" "Crack House Harry," a "Reno/Tahoe . . . man . . . said to belong to the Nevada Mafia;" a "forged and altered" "Temporary Restraining Order" filed against Mr. Christiansen "for sexual assault"; and the murder of Mr. Christiansen's German Shepherd, Saber. *See* Ex. E at 3, 6, 11, 23, 34.

After learning of Mr. Christiansen's improper communications with Assertio's IR consultant, defense counsel promptly informed plaintiffs' counsel Kaplan Fox on October 20, 2024. On the evening of Thursday, October 24, 2024, Kaplan Fox responded: "we take this matter seriously and have taken measures to ensure that it does not happen again." Ex. A at 1. The next day, Kaplan Fox filed a complaint in the name of Mr. Ayoub, initiating a new action asserting the same claims asserted here against the same defendants on behalf of the same alleged class. Three business days later, Kaplan Fox filed a motion to certify this action as a class action, for appointment of Mr. Christiansen and Mr. Ayoub as co-class representatives, and for appointment of Kaplan Fox as class counsel.

Mr. Christiansen's conduct—disclosing (or purporting to disclose) confidential information from a mediation to a third-party and seeking to negotiate a personal settlement directly with the management of Spectrum's parent company behind the backs of both his counsel and Spectrum's—plainly renders him unfit to serve as a representative plaintiff. Kaplan Fox's response can only be understood as a concession that Mr. Christiansen's conduct was improper. Moreover, while an individual's physical or mental health is typically irrelevant to his fitness to serve as a representative plaintiff, Mr. Christiansen's apparent subscription to delusional conspiracy theories is directly relevant to his fitness here, given the fact that, within the past two weeks, he went behind his counsel's back to seek a financial settlement in this action for the benefit of the "Columbine Commission."

Kaplan Fox's filing of a new complaint on behalf of another putative class member rather than seeking leave of the Court is an improper end-run around the Court's scheduling order (which does not permit addition of new parties without leave of Court) and the PSLRA's lead plaintiff appointment process. Where, as here, a Court appointed lead plaintiff is

2

shown to be unfit to continue in that role, "it is the court's role to appoint a substitute lead plaintiff, not [Christiansen's] or his counsel's." *In re Nutanix, Inc. Sec. Litig.*, 2021 WL 783579, at \*2 (N.D. Cal. Mar. 1, 2021).

The Court should disqualify Mr. Christiansen from service as lead plaintiff and implement a process—consistent with the PSLRA—for selecting a substitute lead plaintiff. Pending that process, the Court should stay all other proceedings in this action.

## BACKGROUND

On December 5, 2022, Kaplan Fox filed the initial complaint in this private securities litigation on behalf of Enrique Osorio-Franco. ECF No. 1. Four different purported class members applied for appointment as lead plaintiff, including Mr. Christiansen, represented by Kaplan Fox. On March 21, 2023, the Court appointed Mr. Christiansen as lead plaintiff and Kaplan Fox as lead counsel. ECF No. 63. On February 15, 2024, the Court entered the parties' stipulated Civil Case Management Plan and Scheduling Order ("Scheduling Order"), which provides that "amended pleadings may not be filed and additional parties may not be joined except with leave of the Court." ECF No. 99.

October 18, 2024 Christiansen sent at least two emails to Spectrum's third-party investor-relations consultant, Darrow Associates, in which he discussed confidential settlement communications and information and made various false and misleading statements about the parties' respective settlement positions at mediation. *See* Exs. A & B.

Upon learning of Christiansen's breach of confidentiality, defense counsel promptly informed Christiansen's counsel (and Court-appointed Lead Counsel), Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"). Ex. C. Defendants' counsel followed up two days later.

3

On October 22, Kaplan Fox responded via email, noting that they were "taking this matter seriously" and asking for more details on the communications. Ex. A at 1. On October 23, defense counsel forwarded Mr. Christiansen's emails to Kaplan Fox. *See* Exs. A & B. On October 24, 2024, Kaplan Fox emailed defense counsel, reporting that Kaplan Fox had "taken measures to ensure that it does not happen again" and that, to the best of Kaplan Fox's knowledge, Christiansen had not communicated confidential settlement information to any other third parties. Ex. A at 1.

On October 25, Kaplan Fox filed a new but duplicative class-action complaint in this Court, raising the same allegations against the same defendants on behalf of the same putative class. *See* Nizar Sami Ayoub v. Spectrum Pharmaceuticals, Inc., S.D.N.Y. No. 1:24-cv-08138, ECF No. 1 (filed Oct. 25, 2024); Ex. D. The new complaint is designated as "related to" this case. *Id.*

After learning of Mr. Christiansen's communications with Darrow—in which Mr. Christiansen referred to the "Columbine Commission"—defense counsel discovered a website (columbinecoverup.com) purportedly maintained by Steven B. Christiansen, which purports to expose an alleged conspiracy "to hide the truth" about the "events leading up to and afterwards of The Columbine High School Massacre," including "that the Denver Colo. [a]nd Reno, Nv. Office of the DEA was involved." Mr. Christiansen says this conspiracy involved, among other things, a "campaign of multiple malicious prosecutions against Steven B Christiansen;" a "DEA entrapment drug ring in Littleton Colo.;" "Crack House Harry," a "Reno/Tahoe . . . man . . . said to belong to the Nevada Mafia;" a "forged and altered" "Temporary Restraining Order" filed against Mr. Christiansen "for sexual assault"; and the murder of Mr. Christiansen's German Shepherd, Saber. Ex. E at 3, 6, 11, 23, 34.

4

**ARGUMENT**

## I.  THE COURT SHOULD DISQUALIFY CHRISTIANSEN FROM SERVING AS LEAD PLAINTIFF

Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA) "to address perceived abuses in securities fraud class actions . . . . [s]pecifically, . . . to prevent 'lawyer-driven' litigation." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 132-33 (S.D.N.Y. 2007). "Among other things Congress was concerned that the lead plaintiff in class action lawsuits was being determined by plaintiffs' lawyers' race to the courthouse." *In re Oxford Health Plan, Inc. Sec. Litig.*, 182 F.R.D. 42, 43 (S.D.N.Y. 1998).  Congress recognized that "'[b]ecause class counsels' fees and expenses sometimes amount to one-third or more of recovery, class counsel frequently has a significantly greater interest in the litigation than any individual member of the class.'" *Id.* at 45 (quoting H.R. Rep. No. 104-369 at 17-18 (1995), reprinted in 1996 U.S.C.C.A.N. 730 ("PSLRA House Report"). Accordingly, "the PSLRA amended the Exchange Act by, among other things, setting forth a procedure for court appointment of lead plaintiffs in securities class actions," under which the court must "'appoint as lead plaintiff' [the class member applicant] that the court determines to be most capable of adequately representing the interests of class members.'" *In re NYSE*, 240 F.R.D. at 132-33 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).

The PSLRA's "lead plaintiff provisions 'were intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class.'" *In re Oxford*, 182 F.R.D. at 45 (quoting PSLRA House Report at 32) (emphasis omitted).

Although the lead plaintiff appointment process occurs at the outset of a federal securities class action, the PSLRA imposes upon courts "a continuing 'duty to monitor whether lead

plaintiffs are capable of adequately protecting the interests of the class members.'" *In re NYSE*, 240 F.R.D. at 133 (quoting *In re Terayon Commc'ns Sys., Inc. Sec. Litig.*, No. C 00-01967 MHP, 2004 WL 413277, at *7 (N.D. Cal. Feb. 23, 2004)). Accordingly, courts may "consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs through the litigation of a securities class action." *Id.*; *see also In re Baan Co. Sec. Litig.*, No. 1:98CV2465(ESH), 2002 WL 32307825, at *4 (D.D.C. July 19, 2002) ("If at any point the court finds that lead plaintiff or their counsel are not fulfilling the requirements of the PSLRA," it may "revisit its rulings on the adequacy of the lead plaintiffs or their counsel.").

Mr. Christiansen's misconduct here strongly supports revisiting the Court's ruling appointing him. Moreover, Mr. Christiansen's apparent paranoid, conspiracy theories about the tragic Columbine shooting provides an additional reason to revisit his appointment and to disqualify him from serving as lead plaintiff. *See Plumlee v. Pfizer, Inc.*, 2014 WL 4275553, at *4 (N.D. Cal. Aug. 29, 2014) (proposed class representative's metal health relevant where record "suggeste[d] [the proposed class representative] suffer[ed] from chronic mental health conditions that may persist to the present day and that could impair her in adequately representing the class' interests"); *Roundtree v. Cincinnati Bell, Inc.*, 90 F.R.D. 7, 10 (S.D. Ohio 1979) ("medical reports … indicat[ing] that plaintiff … suffered … [from] neurosis that adversely affects his temperament" and "may affect plaintiff's ability to vigorously participate in the prosecution of a class action").

## II. THE CASE SHOULD BE STAYED PENDING APPOINTMENT OF A NEW LEAD PLAINTIFF

Under the PSLRA, the case cannot proceed without a Court-appointed lead plaintiff. *See In re Snap Inc. Sec. Litig.*, 394 F. Supp. 3d 1156, 1158-59 (C.D. Cal. 2019) ("The withdrawals of DiBiase and Steinberg mean that the putative class lacks both any Named Plaintiffs and also (and

more importantly) a Lead Plaintiff.  Based on its interpretation of the PSLRA, the Court believes that it must apply the guidelines of the PSLRA in appointing a new Lead Plaintiff. . . .  The Court need not address the issue of class certification until a new Lead Plaintiff is appointed.").  Thus, the Court must implement some procedure for selecting a substitute lead plaintiff.

While the PSLRA is "silent on the proper procedure for substituting a new lead plaintiff when the previously certified one" withdraws or is disqualified, *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002), plainly "it is the court's role to appoint a substitute lead plaintiff, not [the prior lead plaintiff's] or his counsel's," *In re Nutanix*, 2021 WL 783579, at *2. "'[M]erely accepting counsel's suggestion with input from no other potential lead plaintiff is contrary to the PSLRA,' which, at a minimum, 'requires that a potential lead plaintiff either file a complaint or make a motion to serve as lead plaintiff within 60 day of being provided notice of the lawsuit.'" *In re Snap Inc.*, 394 F. Supp. 3d at 1158 (quoting *In re Neopharma, Inc. Sec. Litig.*, 2004 WL 742084, *2-3 (N.D. Ill. Apr. 7, 2004)). Moreover, simply permitting counsel to select a substitute lead plaintiff would directly contravene the PSLRA's core purpose: "to prevent lawyer-driven litigation." *In re Tarragon Corp. Sec. Litig.,* 2007 WL 4302732, at *1, (S.D.N.Y. Dec. 6, 2007).

Thus, the Court should implement "at least a modified renewed PRSLA selection process." *Reese v. Malone*, 2015 WL 1526567, at *3 (W.D. Wash. Apr. 3, 2015).  Although defendants take no position as to the details of such a process, all other proceedings in this action should be stayed pending selection of a substitute lead plaintiff. *In re Snap Inc.*, 394 F. Supp. 3d at 1159.

## CONCLUSION

The Court should stay proceedings until it has resolved matters concerning who may serve as lead plaintiff in this case.

Dated: November 4, 2024
New York, New York

**BAKER BOTTS L.L.P.**

*/s/ James J. Beha II*
James J. Beha II

Kevin M. Sadler (*pro hac vice*)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
Tel: (650) 739-7500

Scott D. Powers (*pro hac vice*)
401 South 1st Street
Suite 1300
Austin, Texas 78704-1296
Tel: (512) 322-2500

James J. Beha II
John B. Lawrence
30 Rockefeller Plaza
New York, New York 10112-4498
Tel: (212) 408-2500

*Counsel for Defendants Spectrum*
*Pharmaceuticals, Inc., Thomas J. Riga, and*
*Francois J. Lebel*