UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. CHRISTIANSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SPECTRUM PHARMACEUTICALS, INC., THOMAS J. RIGA, and FRANCOIS J. LEBEL,<br><br>Defendants. | Case No. 1:22-cv-10292 (VEC) (Consolidated) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISQUALIFY LEAD PLAINTIFF STEVEN B. CHRISTIANSEN AND FOR A STAY OF PROCEEDINGS PENDING APPOINTMENT OF A SUBSTITUTE LEAD PLAINTIFF**

**BAKER BOTTS L.L.P.**

Kevin M. Sadler (admitted *pro hac vice*)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Tel: (650) 739-7500

Scott D. Powers (admitted *pro hac vice*)
401 South 1st Street, Suite 1300
Austin, TX 78704-1296
Tel: (512) 322-2678

James J. Beha II
John B. Lawrence
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 408-2500

*Counsel for Defendants Spectrum Pharmaceuticals, Inc., Thomas J. Riga, and Francois J. Lebel*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT .............................................................................................................................. 1

    I.   THE COURT SHOULD DISQUALIFY MR. CHRISTIANSEN FROM SERVING AS LEAD PLAINTIFF .................................................................................................. 1

        A.   Mr. Christiansen's Misconduct Is Disqualifying ......................................................... 1

        B.   Mr. Christiansen's Fitness to Serve as Lead Plaintiff Is in Serious Doubt ................. 3

    II.  THE COURT SHOULD NOT PERMIT MR. CHRISTIANSEN AND HIS COUNSEL TO CHOOSE HIS REPLACEMENT ............................................................................. 5

    III. THE STAY SHOULD REMAIN IN PLACE UNTIL THE COURT APPOINTS A NEW LEAD PLAINTIFF ............................................................................................................ 6

CONCLUSION .......................................................................................................................... 7

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
 862 F. Supp. 2d 322 (S.D.N.Y. 2012) ..................................................................................... 5

*Hevesi v. Citigroup Inc.*,
 366 F.3d 70 (2d Cir. 2004) ....................................................................................................... 3

*In re Donnkenny Inc. Sec. Litig.*,
 171 F.R.D. 156 (S.D.N.Y. 1997) ............................................................................................. 5

*In re Neopharm, Inc. Sec. Litig.*,
 2004 WL 742084 (N.D. Ill. Apr. 7, 2004) ............................................................................... 5

*In re Nutanix, Inc. Sec. Litig.*,
 2021 WL 783579 (N.D. Cal. Mar. 1, 2021) ............................................................................. 5

*In re NYSE Specialists Sec. Litig.*,
 240 F.R.D. 128 (S.D.N.Y. 2007) ............................................................................................. 3

*In re Snap Inc. Sec. Litig.*,
 394 F. Supp. 3d 1156 (C.D. Cal. 2019) ................................................................................... 5

*In re Tarragon Corp. Sec. Litig.*,
 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) ........................................................................... 5

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
 2021 WL 2201388 (S.D.N.Y. June 1, 2021) ........................................................................... 1

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
 2022 WL 17884165 (S.D.N.Y. Dec. 23, 2022) .................................................................. 5, 6

*Rekor Sys., Inc. v. Loughlin*,
 2021 WL 2186439 (S.D.N.Y. May 28, 2021) ......................................................................... 1

**STATUTES**

15 U.S.C. § 78u–4 .......................................................................................................................... 5

**ARGUMENT**

**I.   THE COURT SHOULD DISQUALIFY MR. CHRISTIANSEN FROM SERVING AS LEAD PLAINTIFF**

    **A.  Mr. Christiansen's Misconduct Is Disqualifying**

There is no dispute Mr. Christiansen went behind his counsel's back; repeatedly contacted a third-party consultant to Spectrum's parent company, Assertio; disclosed (and grossly mischaracterized) the parties' confidential settlement communications; and sought to arrange a one-on-one "phone conference" to discuss settlement directly with Assertio's CEO. The Opposition's failure to acknowledge the seriousness of this conduct confirms that Mr. Christiansen is not qualified to serve as a representative plaintiff.

The Opposition seeks to downplay Mr. Christiansen's misconduct, conceding it was "misguided in hindsight" but arguing that "the case law . . . would permit him to contact Assertio or its representatives" and that doing so would be consistent with "a representative plaintiff's dut[y] [to] 'evaluat[e] settlement opportunities." Opp. at 1, 2, 5 (citation omitted). But Mr. Christiansen did *not* simply "'reach[ ] out to another party to the litigation to discuss the litigation.'" Opp. at 2 (quoting *Rekor Sys., Inc. v. Loughlin*, 2021 WL 2186439, at *1 (S.D.N.Y. May 28, 2021)). He repeatedly disclosed confidential settlement communications to a third party. Thus, it is irrelevant that the "rules of professional conduct do 'not prohibit a represented party from reaching out directly to another represented party.'" Opp. at 2 (quoting *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 2201388, at *4 (S.D.N.Y. June 1, 2021)).[1]

---

[1] The court's decision in *Turquoise Hill* does not suggest that Mr. Christiansen's conduct here was appropriate. In *Turquoise Hill*, the lead plaintiff (Pentwater)—an institutional investor that remained the company's largest minority shareholder—had been "pursu[ing] its rights as a . . . current investor[ ]" to "rais[e] questions in public shareholder forums.'" 2021 WL 2201388, at *3 (internal quotation marks omitted). In denying the defendants' motion to "direct[ ] Pentwater to cease all communications with Turquoise Hill," Judge Liman noted that the "Rules of Professional Conduct permit party-to-party communications." *Id.* at *3, 8.

1

Although Mr. Christiansen now says he "mistakenly believ[ed] that he was communicating directly with Assertio management," Opp. at 2, he provides no plausible explanation for this purported "mistake." He does not explain whether he understood his confidentiality obligations or why he thought sending an email disclosing confidential settlement discussions to jdarrow@darrowir.com could possibly be consistent with those obligations. Nor does he explain why he apparently sought to initiate "direct" settlement discussions with Assertio without first disclosing his plans to his counsel. Mr. Christiansen violated his confidentiality obligations and disclosed confidential settlement communications to a third party. That conduct is disqualifying.

Mr. Christiansen's duty to "evaluat[e] settlement opportunities" cannot justify his conduct, either. *See* Opp. at 5 (internal quotation marks omitted). To the contrary, he admits that he did not even attend or participate in the parties' mediation, Christiansen Decl. ¶ 6 (ECF No. 131-1), when he should have been supervising Lead Counsel and evaluating potential settlements in his self-proclaimed role as "[e]xemplary Lead Plaintiff," Opp. at 3.

Despite efforts to downplay Mr. Christiansen's misconduct, Lead Counsel's actions—requiring Mr. Christiansen to confirm in writing that he will "not discuss the Action with anyone other than [his] attorneys" and recruiting a replacement plaintiff—show a clear understanding of its significance. *See* Christiansen Decl. ¶ 10 (ECF No. 131-1). If the law did, in fact, permit Mr. Christiansen's communications, as the Opposition suggests, Opp. at 2, there would be no reason for Mr. Christiansen to promise not to do it again. Nor would Lead Counsel have found it necessary to get that promise in writing in order to "reassure the Court." *Id.*

As to the attempted addition of Mr. Ayoub as a new lead plaintiff, the Opposition disingenuously argues that "Courts routinely allow lead plaintiffs to add class representatives at

2

the class certification stage of litigation." *Id.* at 4. Those cases, however, involve "the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004).[2] But this is not a "routine" case of adding representation to address standing concerns. The Opposition concedes that Mr. Ayoub was added to address concerns about Mr. Christiansen's conduct, not "to aid . . . in representing [the] class." *See* Opp. at 7 n.5.[3] Lead Counsel's urgency in identifying a replacement plaintiff and filing a new complaint within a week of learning about Mr. Christiansen's misconduct should be recognized for what it is: an acknowledgement that Mr. Christiansen's actions disqualify him from continued service as a fiduciary for the class.

### B. Mr. Christiansen's Fitness to Serve as Lead Plaintiff Is in Serious Doubt

In response to the revelation of Mr. Christiansen's writings about the Columbine tragedy, the Opposition argues that Mr. Christiansen's "personal beliefs are irrelevant;" that "Defendants cherry-pick from Mr. Christiansen's website posting from 2016," but "do not dispute or challenge his veracity and credibility;" and that "mainstream media outlets and authors have published stories articulating similar theories." *See* Opp. at 5-6 (initial capitalization omitted).

---

[2] For example, in *Hevesi v. Citigroup*, after the defendants argued that the lead plaintiff "lack[ed] standing" to bring certain claims because it had "not purchase[d] bonds in [the] offering[s]," the court permitted the lead plaintiff to "cure[ ]" its "deficiencies . . . through the appointment of [additional] named plaintiffs" who had purchased in the offerings. 366 F.3d at 81-82. Similarly, in *In re NYSE Specialists Securities Litigation*, the class included both purchasers through the NYSE's electronic order entry system, "SuperDOT," and purchasers through large orders not facilitated by SuperDOT. 240 F.R.D. 128, 140 (S.D.N.Y. 2007). The court initially appointed co-lead plaintiffs— one with "the largest financial interest in market orders placed over SuperDOT" and another (CalPERS) with "the largest financial interest in large block transactions." *Id.* After granting a motion to disqualify the first, the court permitted CalPERS to continue serving as "the sole lead plaintiff," noting that "nothing in the statute would preclude CalPERS from adding named plaintiffs and class representatives as needed to adequately and effectively represent all of the interests of the purported class, including those of the absent SuperDOT members." *Id.* at 141.

[3] Lead Counsel claims to have filed the *Ayoub* complaint because "Defendants [were] creating a storm over Mr. Christiansen." Opp. at 7 n.5. But, as of October 25 (when Kaplan Fox filed the *Ayoub* complaint), defense counsel had merely informed Kaplan Fox of Mr. Christiansen's improper communications, asked them to ensure it would not happen again, and "reserve[d] all rights." Defendants had not "creat[ed] a storm"; Lead Counsel concluded on their own that Mr. Christiansen's conduct compromised his ability to serve as a representative plaintiff.

3

These arguments do not overcome the serious concerns about Mr. Christiansen's fitness raised by writings about the so-called "Columbine Commission."

The "Columbine Commission" and Mr. Christiansen's writings about the Columbine tragedy are plainly relevant to this action because Mr. Christiansen himself invoked "The Columbine Commission" in his communications with Darrow:

> "+++ Right now, The Columbine Commission, has money, working capital tied up in the suit. . . Loss of the use of this working capital for a couple of years . . . Is the CEO really interested in ripping off The Columbine Commission . . . ?? +++ Can you arainge [*sic*] a phone conference, I would like to know first hand, would management like to have investors re-cover their working capital or, are they really intent on trying to rip off investors, of the working capital..???"

Beha Decl. Ex. A at 4 (ECF 125-1). Indeed, Defendants only learned of Mr. Christiansen's "Columbine Commission" website—and have only raised it with the Court—because Mr. Christiansen wrote **last month** that "The Columbine Commission, has money, working capital tied up in the suit," suggesting that he views himself as acting on behalf of an unnamed party—"The Columbine Commission"—in this action. The Opposition baldly asserts that Mr. Christiansen's "Columbine Commission" website is irrelevant. Opp. at 5-6. But the Opposition fails to explain Mr. Christiansen's reference to "The Columbine Commission" having money tied up in this action or his understanding of the Columbine Commission's role in this action.

As for Mr. Christiansen's argument that Defendants "cherry-pick" from his "affidavit" but "do not dispute or challenge his veracity and credibility," Opp. at 5, the Court can review for itself Mr. Christiansen's 20,000-word "affidavit" to determine its "veracity" and "credibility." *See* Beha Decl. Ex. E (ECF No. 125-5). Defendants respectfully submit that the contents of Mr. Christiansen's Columbine Commission affidavit and his conduct in this action cast serious doubt on his declaration that he is "of sound mind." Christiansen Decl. ¶ 12 (ECF No. 131-1). At a bare minimum, the fact that Mr. Christiansen apparently views himself as acting on the

4

Columbine Commission's behalf—which Mr. Christiansen failed to disclose in his lead-plaintiff application—casts further doubt on his fitness to serve as lead plaintiff.

## II. THE COURT SHOULD NOT PERMIT MR. CHRISTIANSEN AND HIS COUNSEL TO CHOOSE HIS REPLACEMENT

Although Defendants take no position as to the precise process the Court should employ to select a replacement lead plaintiff, the Court "should not 'simply assume[ ] that [lead counsel's] choice of [substitute] lead plaintiff is the most adequate plaintiff.'" *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 326 (S.D.N.Y. 2012) (alterations in original).[4]

The PSLRA directs the Court to select the lead plaintiff, and the lead plaintiff "subject to the approval of the court, [to] select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). Permitting Lead Counsel to select the lead plaintiff would turn this process on its head, directly contravening the PSLRA's core purpose: "to prevent lawyer-driven litigation." *In re Tarragon Corp. Sec. Litig.*, 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).

The court's decision in *Turquoise Hill* is instructive. After the court-appointed lead plaintiff (Pentwater) asserted claims in Turquoise Hill's Canadian insolvency proceeding, it moved for an order permitting it to continue to serve as lead plaintiff, while adding an additional lead plaintiff "to temper any concerns" about potential conflicts. 2022 WL 17884165, at *8 (S.D.N.Y. Dec. 23, 2022). The court permitted Pentwater to continue as lead plaintiff—

---

[4] *See also In re Snap Inc. Sec. Litig.*, 394 F. Supp. 3d 1156, 1158 (C.D. Cal. 2019) ("'[M]erely accepting counsel's suggestion with input from no other potential lead plaintiff is contrary to the PSLRA.'" (citation omitted)); *In re Neopharm, Inc. Sec. Litig.*, 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004) ("That approach, however, simply assumes that Milberg Weiss' choice of lead plaintiff is the most adequate plaintiff. The better approach is to grant Larson's motion for withdrawal as lead plaintiff and allow for any prospective lead plaintiffs to make a motion for appointment."); *In re Nutanix, Inc. Sec. Litig.*, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) ("[I]t is the court's role to appoint a substitute lead plaintiff, not [the prior lead plaintiff's] or his counsel's.").

5

concluding that any potential conflict should be assessed "at the time of class certification"—but denied Pentwater's request to add another lead plaintiff. *Id.* at *8-9. The court explained that, "in the event that Pentwater is found not adequate under Rule 23, the most appropriate procedure would be to allow other putative class members . . . to move for appointment as lead plaintiff upon Pentwater's withdrawal." *Id.* at *9. The same is true here.

**III.   THE STAY SHOULD REMAIN IN PLACE UNTIL THE COURT APPOINTS A NEW LEAD PLAINTIFF**

As the Court recognized when it entered a stay pending resolution of this motion, discovery cannot proceed without a court-appointed lead plaintiff in place. *See* ECF No. 129. If the Court disqualifies Mr. Christiansen, the stay should remain in place until a replacement lead plaintiff is appointed.

## CONCLUSION

The Court should disqualify Mr. Christiansen as lead plaintiff and maintain the stay of proceedings until it appoints replacement lead plaintiff and lead counsel.

Dated: November 25, 2024  
New York, New York

**BAKER BOTTS L.L.P.**

/s/ James J. Beha II  
James J. Beha II

Kevin M. Sadler (*pro hac vice*)  
1001 Page Mill Road  
Building One, Suite 200  
Palo Alto, California 94304-1007  
Tel: (650) 739-7500

Scott D. Powers (*pro hac vice*)  
401 South 1st Street  
Suite 1300  
Austin, Texas 78704-1296  
Tel: (512) 322-2500

James J. Beha II  
John B. Lawrence  
30 Rockefeller Plaza  
New York, New York 10112-4498  
Tel: (212) 408-2500

*Counsel for Defendants Spectrum Pharmaceuticals, Inc., Thomas J. Riga, and Francois J. Lebel*