UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
STEVEN B. CHRISTIANSEN, on behalf of himself :
and a class of similarly situated investors, :
                                              :
                                  Plaintiff,  :
                                              :          22-CV-10292 (VEC)
             -against-                        :
                                              :          OPINION & ORDER
SPECTRUM PHARMACEUTICALS, INC.,               :
THOMAS J. RIGA, and FRANCOIS J.               :
LEBEL,                                        :
                                              :
                                 Defendants.  :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

Spectrum Pharmaceuticals, Inc. ("Spectrum") and its executives (together, "Defendants")
moved to disqualify Steven Christiansen as Lead Plaintiff in this putative securities class action
and to stay all proceedings pending appointment of a substitute lead plaintiff. *See* Defs. Mot. to
Disqualify Lead Pl. and to Stay Proceedings (the "Motion" or "Mot."), Dkt. 123. Christiansen
opposed. *See* Opp., Dkt. 130. The Motion is GRANTED, and the lead plaintiff appointment
process will be re-opened on a modified basis.

## BACKGROUND

In late 2022 and early 2023, various plaintiffs filed putative class actions against
Defendants, alleging that they violated the Securities and Exchange Act and SEC Rule 10b-5 by
making false or misleading statements about a drug manufactured by Spectrum. *See, e.g.*,
Compl., Dkt. 1; *Cummings v. Spectrum Pharmaceuticals, Inc. et al*., 22-CV-10677 (S.D.N.Y.);
*Carneiro v. Spectrum Pharmaceuticals, Inc. et al*., 23-CV-767 (S.D.N.Y.). Four plaintiffs
moved for consolidation and appointment as lead plaintiff pursuant to the Private Securities
Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(3). *See* Dkts. 19, 23, 24, 31. The Court

found that Steven Christiansen was the most adequate of the movants and appointed him to serve as lead plaintiff. Mar. 21, 2023, Opinion & Order, Dkt. 63, at 5. The Court appointed Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), the law firm that represents Christiansen, to serve as Lead Counsel. *Id.*

The action survived Defendants' motion to dismiss and proceeded to discovery. *See* Jan. 23, 2024, Opinion & Order, Dkt. 91. Approximately eight months after beginning discovery, Christiansen personally sent multiple emails to an employee of Darrow, an outside investor relations consulting firm that has provided consulting services to Assertio Holdings, Spectrum's parent company. Defs. Mem., Dkt. 124, at 1. In the emails, Christiansen, who mistakenly believed he was communicating with Assertio, expressed his dissatisfaction with settlement discussions and requested a telephone conference with Assertio to "explain" his settlement proposal. Beha Decl. Ex. A, Dkt. 127-1, at 2–3; *see also* Beha Decl. Ex. B, Dkt. 127-2, at 1–2 (additional email to the consulting firm employee). Among other things, Christiansen mentioned that investors, including the "Columbine Commission," have "working capital tied up in this suit," and that Defendants were "ripping off The Columbine Commission and other investors." Beha Decl. Ex. A at 3. As best the Court can discern, the Columbine Commission is an organization founded by Christiansen to expose a purported conspiracy to conceal facts about the 1999 Columbine High School shooting. *See* Beha Decl. Ex. E, Dkt. 125-5 (depicting a "Columbine Cover Up" website operated by Christiansen, which references the Columbine Commission).

Defendants' counsel informed Kaplan Fox about Christiansen's communications with the Darrow employee. Beha Decl. Ex. A at 2. Kaplan Fox replied that it had spoken to Christiansen, who represented that he had not communicated settlement negotiation details with

any other third parties. *Id.* at 1. Kaplan Fox relayed to Defendants Christiansen's promise that

he would not communicate about the case to anyone other than his attorneys. *Id.*

The following day, Kaplan Fox filed a new class action complaint on behalf of Nizar

Sami Ayoub. *See Ayoub v. Spectrum Pharmaceuticals, Inc.*, No. 24-CV-8138 (S.D.N.Y.)

("*Ayoub*"). That complaint was materially identical to the one in this action. *Compare Ayoub*,

Compl., Dkt. 1 *with* Consol. Compl., Dkt. 67. Several days later, Plaintiff moved for class

certification in this case. Mot. to Certify Class, Dkt. 116. In the memorandum of law

accompanying that motion, Plaintiff refers to Ayoub as an "additional plaintiff" and seeks an

order appointing both Christiansen and Ayoub as class representatives, even though Ayoub has

never been named as a party in this action. Pl. Mem. in Support of Mot. to Certify Class, Dkt.

117, at 1.

The following day, the Court ordered the parties in this case and *Ayoub* to show cause

why the two cases should not be consolidated pursuant to Federal Rule of Civil Procedure 42.

*See* Oct. 31, 2024, Order, Dkt. 121. In response, Defendants filed the instant Motion to

disqualify Mr. Christiansen as lead plaintiff and to stay all proceedings pending appointment of a

substitute. The Court stayed the case pending resolution of the Motion. *See* Nov. 6, 2024,

Order, Dkt. 129.

Concurrent with his Opposition to the Motion, Mr. Christiansen filed a declaration

affirming that he would not contact "Assertio, Darrow or any other representative of Assertio or

Spectrum, including its attorneys, and [would] not discuss the Action with anyone other than

[his] attorneys, except in a deposition or court proceedings in response to questions from an

attorney or the Court," and that "[he] will communicate [his] views regarding the parties'

settlement discussions through lead counsel and the mediator." Campisi Decl. Ex. A, Dkt. 131-

1, ¶ 10. Several months later, however, Christiansen sent a *pro se* letter to this Court detailing

3

various conspiracy theories about the Columbine High School shooting, defending his right to engage in settlement discussions directly with Assertio, and accusing Defendants' counsel of abridging his First Amendment rights. *See* Christiansen Letter, Dkt. 135. The Court ordered Plaintiff's counsel to instruct Mr. Christiansen not to correspond with the Court so long as he is represented by counsel. *See* Feb. 24, 2025, Order, Dkt. 136. Plaintiff's counsel subsequently represented that it had done so. *See* Not. of Compliance, Dkt. 137.

## DISCUSSION

### I.    Christiansen is Disqualified as Lead Plaintiff

Pursuant to the PSLRA, the Court, upon timely motion, must "appoint as lead plaintiff the member or members of the purported plaintiff class that [it] determines to be the most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). After a lead plaintiff is appointed, the Court maintains a "continuing duty to monitor" to ensure that the lead plaintiff is "capable of adequately protecting the interests of the class members" as required by Federal Rule of Civil Procedure 23. *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 133 (S.D.N.Y. 2007) (citation and internal quotation marks omitted). Accordingly, "it is within the Court's discretion and responsibility to consider a motion to disqualify and remove a lead plaintiff appointed by the Court, despite a lack of explicit authorization under the PSLRA or Rule 23." *Id.* at 134; *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 408 (S.D.N.Y. 2004) (when "information may come to light or other reasons develop indicating the need to revisit the lead-plaintiff designation," the Court may reconsider the "appointment of lead plaintiff and lead counsel"). Factors the Court may consider in determining whether a lead plaintiff can protect adequately the interests of the putative class include whether there is any "conflict between the proposed lead plaintiff and the members of the class," *Kaplan v. Gelfond*, 240 F.R.D. 88, 94

(S.D.N.Y. 2007), as well as the lead plaintiff's "honesty and trustworthiness." *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Two aspects of Christiansen's conduct suggest that he cannot protect adequately the interests of the putative class. First, Christiansen violated class members' trust by divulging confidential settlement information to Darrow, a non-party. Kaplan Fox acknowledged the "serious[]" nature of Christiansen's infraction in its communications with Defendants' counsel, including the possibility that disclosures of confidential information to non-parties may constitute a waiver of the attorney-client privilege. *See* Beha Decl. Ex. A at 1. Kaplan Fox now avers that Christiansen "mistakenly believe[ed] that he was communicating directly with Assertio management" and will in the future "communicate his views regarding the parties' settlement discussions only through lead counsel and the mediator." Opp. at 1. But Christiansen's own conduct belies these promises. Indeed, several months after Kaplan Fox purportedly educated Christiansen to the error of his ways, he filed a letter with the Court in which he maintained that he had a "right" to "contact management as [he] did" when he emailed Darrow. Christiansen Letter at 2. The Court, therefore, has no confidence that Christiansen's misconduct will not recur and concludes that he cannot be relied upon to protect class members' interests in protecting confidential communications moving forward.

Second, the contents of Christiansen's communications with Darrow and with this Court suggest that he is fixated on matters that are irrelevant to this case — specifically, his "Columbine Commission." Christiansen has emphasized that the Columbine Commission "has money, working capital tied up in this suit" and requested a private phone conference with Defendants to help "investors re-cover their working capital." Beha Decl. Ex. A at 3. Christiansen's subsequent *pro se* letter to this Court likewise contains extensive references to his beliefs about the Columbine High School shooting. Christiansen Letter at 1–3. The fact that

Christiansen has repeatedly invoked his belief in conspiracy theories — first in his communications with Darrow and then in his letter to the Court — suggests that his interest in this case is driven, at least in part, by a desire to further his personal convictions.  Inasmuch as those convictions are, as the Opposition correctly notes, entirely irrelevant to any of the claims in this action, *see* Opp. at 5–6, Christiansen's insistence of discussing them in the context of settlement discussions suggests a conflict of interest between him and the putative class.

Accordingly, Christiansen is disqualified from serving as lead plaintiff.

## II.    The Lead Plaintiff Appointment Process is Reopened

The PSLRA does not specify what the Court should do upon ascertaining that the appointed lead plaintiff fails to meet all of the requirements of Rule 23.  *In re NYSE Specialists*, 240 F.R.D. at 133; *see also In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002) ("The PSLRA is entirely silent on the proper procedure for substituting a new lead plaintiff . . . .").  When such situations arise, "[i]t only stands to reason that the appropriate lead plaintiff would be the next 'most adequate' plaintiff," meaning the plaintiff who: "(1) filed an initial complaint or timely moved for appointment as lead plaintiff; (2) has the largest financial interest in the case; and (3) otherwise satisfies the requirements of Rule 23."  *Id*.

Here, however, it is unclear who the next "most adequate" plaintiff would be.   In its opinion appointing Christiansen as lead plaintiff, the Court considered the applications of two other movants, both of whom pled more extensive losses than Christiansen but who, for various reasons, were deemed less adequate than him.[1]  *See* Mar. 21, 2023, Opinion & Order at 2 (movant Spectrum Investor Group failed to "demonstrate[] that it is a 'cohesive group' that would be able effectively to manage complex litigation taking place in, and concerning events

---

[1]        A third movant, Luis Carneiro, submitted a notice of non-opposition to the competing lead plaintiff motions. Carneiro Not., Dkt. 36.

that occurred in, a country where no group member resides"); *id.* at 4 (movant Chi Hoon Ha's "history of criminal activity, particularly fraud, suggests that he lacks the honesty, conscientiousness, and other affirmative personal qualities required of a class representative" (cleaned up)).  Given that, it does not appear that there is any plaintiff who timely moved for appointment who would be qualified to serve as lead plaintiff.

Plaintiff's counsel has argued that the Court can circumvent the problem of finding a new lead plaintiff by appointing Ayoub, the plaintiff in the newly filed lawsuit.  But the Court is wary to "simply assume that lead counsel's choice of substitute lead plaintiff is the most adequate plaintiff." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 326 (S.D.N.Y. 2012) (cleaned up).  Instead, the Court finds it appropriate to reopen the lead plaintiff appointment process for any investor or group of investors who wishes to be named as lead plaintiff to represent the putative class.

Two out-of-Circuit cases inform the Court's approach to this unusual situation.  In *In re Neopharm, Inc. Securities Litigation*, the court-appointed lead plaintiff moved for leave to withdraw and for another party of its choosing to succeed it as lead plaintiff.  No. 02-C2976, 2004 WL 742084, at *1 (N.D. Ill. Apr. 7, 2004).  The court allowed the lead plaintiff to withdraw but declined to appoint its chosen substitute, reasoning that "merely accepting counsel's suggestion with input from no other potential lead plaintiff is contrary to the PSLRA." *Id.* at *3.  Instead, the court concluded that other potential lead plaintiffs must be given the opportunity to move for appointment, just as the court must be given the chance "to make a reasoned analysis under the PSLRA rather than . . . summarily accept the submissions provided by lead counsel or the former lead plaintiff." *Id.*

The Central District of California followed a similar approach in *In re Snap Inc. Securities Litigation* after the court-appointed lead plaintiff filed a notice of withdrawal but

conditioned his withdrawal on the court appointing his preferred substitute. 394 F. Supp. 3d 1156, 1157 (C.D. Cal. 2019). The court rejected the lead plaintiff's machinations, finding that the lead plaintiff's notice of withdrawal ended his involvement with the case. *Id.* at 1158. The court declined to accept the lead plaintiff's proposed substitute outright, concluding instead that it was necessary to reopen the lead plaintiff appointment process. *Id.* at 1158–59 (citing *Neopharm*, 2004 WL 742084, at *3).

The same principles guide this Court. "One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation." *In re Donnkenny Inc. Securities Litigation*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997). That purpose would be undermined if the Court were to allow Kaplan Fox unilaterally to insert Ayoub, a non-party, as lead plaintiff in this case without judicial inquiry and without allowing other potential lead plaintiffs the opportunity to throw their hats in the ring.

Kaplan Fox's attempt to liken this case to *In re Initial Public Offering Securities Litigation*, 214 F.R.D. 117 (S.D.N.Y. 2002), falls short. In that case, the court-appointed lead plaintiff of the consolidated litigation withdrew, and plaintiffs from certain member cases moved to be substituted in as lead plaintiffs. *Id.* at 119–20. Finding that the proposed substitutes met the requirements of the PSLRA and Rule 23, the court appointed them as lead plaintiffs without reopening the appointment process. *Id.* at 121. At least two factors differentiate that case from this one. First, in *In re IPO*, the original lead plaintiff appointment process was not competitive, and the court was "not aware of any other members of the proposed classes in any of [the consolidated] cases," other than the ones who had moved, "that sought to serve as lead plaintiff either now or in the past." *Id.* at 121. The court specifically noted that reopening the appointment process might have been appropriate if the original process had been contested. *Id.* at 120 n.5. Second, the proposed substitute lead plaintiffs in *In re IPO* had filed complaints of

8

their own that were consolidated into the litigation one to two years prior to the proposal to substitute them for the originally-named lead plaintiff.  *Id*. at 120.  *Ayoub*, by contrast, has not been consolidated with this case.  Neither Defendants nor the Court were aware that Ayoub existed — let alone that he would be put forward as a potential lead plaintiff and class representative — until after Christiansen's emails to Darrow surfaced.  The Court has no way of knowing whether Ayoub is in fact the most adequate member of the putative class willing to serve as lead plaintiff unless it reopens the appointment process.

Having concluded that reopening the lead plaintiff appointment process is appropriate, the Court must also determine (1) what notice should be given to members of the putative class and (2) how long the application period must remain open.  The PSLRA requires, as part of the lead plaintiff appointment process, that plaintiffs cause notice of the pendency of the action to be published in a widely circulated national business-oriented publication or wire service within 20 days of the filing of the complaint, and that putative class members be given 60 days after the publication of such notice to move the court to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3).  In light of the PSLRA's guidance, the fact that a significant amount of time has passed since the initial lead plaintiff appointment process closed, and the lack of clarity surrounding how Ayoub was identified as a potential lead plaintiff, the Court finds it necessary for Kaplan Fox, as counsel for Christiansen and the only known prospective substitute lead plaintiff, to publish notice in a widely circulated national business-oriented publication or wire service that the lead plaintiff appointment process has been reopened.  The Court further finds, however, that because putative class members were previously given notice of the pendency of this action, it is appropriate to shorten the period for prospective lead plaintiffs to move for appointment from 60 days to 30 days following publication of the notice.  *See In re Neopharm*, 2004 WL 742084, at *3

(shortening the period for prospective substitute lead plaintiffs to seek appointment to 21 days);

*In re Snap Inc.*, 293 F. Supp. 3d at 1159 (same).

## CONCLUSION

For the foregoing reasons, the Motion is GRANTED and Christiansen is DISQUALIFIED as lead plaintiff. Not later than **Monday, August 25, 2025**, counsel for Plaintiff must cause notice of the pendency of this action and of the reopening of the lead plaintiff appointment process to be published in a widely circulated national business-oriented publication or wire service. Members of the putative class may move the Court to serve as substitute lead plaintiff not later than **Wednesday, September 24, 2025**.

Plaintiff's request for a status conference, Dkt. 142, is DENIED WITHOUT PREJUDICE to Plaintiff renewing the request with an explanation of what issues he wishes to discuss at the conference. Except for filings necessary to complete the selection of a new lead plaintiff, this case remains STAYED.


**SO ORDERED.**

**Date:  August 4, 2025**
       **New York, New York**

                    **VALERIE CAPRONI**
                    **United States District Judge**