AUGUST 4,  2025

**MEMO ENDORSED**

RECEIVED

AUG 1 2025

VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

STEVEN B CHRISTIANSEN

Steven.paralex@gmail com

RE: 1:22-CV-10292/ Steven B Christiansen VS Spectrum Pharmaceuticals INC

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/15/2025

**TO THE HONORABLE JUDGE, VALERIE CAPRONI,**

_**You're Honor, with all due respect to the courts and a court order,**_

_* I have no choice but to send this letter and advise the court that my attorney Jeff Campisi_

_has for the past one and a half years (1 ½ yrs) refused to do anything I have requested dating_

_back to May 2024._

**_*** I HAD ABSOLUTLY NO INPUT ON THE LETTER FOR A CONFRENCE !_**

**_*** I HAVE NO IDEA WHAT WAS REQUESTED ???_**

**_***DOCKET 142, I HAD NO INPUT..ONLY JEFF CAMPISI_**

_* I had asked my attorney Jeff Campisi to include additional information. Dating back to_

_November 25 2024 when Document 132 was filed. The Motion to Disqualify Steven B_

_Christiansen as lead plaintiff._

_*Jeff Campisi has refused to address the lies and deliberate attempt by James Beha to_

_persuade the court to dismiss me as lead plaintiff._

_* Jeff Campisi has on every request refused to include in any filing these points of rebuttal._

_* Jeff Campisi has refused to include factually truthful information in any filing until I_

_conceded to omitting the information that I think is critical._


_***Jeff Campisi will not file anything requested by the Class of Investors/ Plaintiffs /_

_Represented by Steven B Christiansen / Appointed by this court to be the Lead Plaintiff._

**_*** I am confident that upon reading my information you will understand that it_**

**_was nessacery to do so and that I am being Silenced from having critical_**

**_information added to the  Memorandum of Law in Support of Lead Plaintiff's_**

**_Motion to Vacate the Stay of All Proceedings._**

## DOCUMENT 132 / FILED / 11/25/24

## <u>The Stay of All Proceedings Should Never Have Been Granted.</u>

*** The court only accepted the lies of James Beha and never made an attempt to verify

otherwise.

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION DISQUALIFY LEAD PLAINTIFF STEVEN B. CHRISTIANSEN AND FOR A STAY OF PROCEEDINGS PENDING APPOINTMENT OF A SUBSTITUTE LEAD PLAINTIFF

### 1. THE COURT SHOULD DISQUALIFY MR. CHRISTIANSEN FROM SERVING AS LEAD PLAINTIFF

### A. Mr. Christiansen's Misconduct Is Disqualifying

There is no dispute Mr. Christiansen went behind his counsel's back; repeatedly
Contacted a third-party consultant to Spectrum's parent company, Assertio; disclosed (and
Grossly mischaracterized) the parties' confidential settlement communications; and sought to
Arrange a one-on-one "phone conference" to discuss settlement directly with Assertio's CEO.

*1)* **_As a shareholder in both companies, SPPI & ASRT I have right to contact the management of a company I own shares in._**

*a)* **_I have a protected right to talk to Assertio as Guaranteed under the 1st Amendment of the US Constitution._**

*b)* **_Special Note, I Have Used The Cornell School of Law, Legal Information Institute since I Founded The Columbine Commission in 1999 for Legal Information, Statutes and correct interpretations of The Constitution of The United States_**

**_https://www.law.cornell.edu/constitution/first_amendment#:~:text=Congress%20shall %20make%20no%20law,for%20a%20redress%20of%20grievances._**

c) **Amendment I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free
exercise thereof**; or abridging the freedom of speech,** or of the press; or the right of the
people peaceably to assemble, **and to petition the government for a redress of grievances.**

> **d)** *James Beha makes repeated attempts to Violate the Protections of the US Constitution and Abridge The Freedom of Speech of Steven B Christiansen with this Motion to Disqualify the Lead Plaintiff.*

**2)** *This letter will serve as my "PETITION" for a REDRESS of GRIEVENCES*

The Opposition's failure to acknowledge the seriousness of this conduct confirms that Mr. Christiansen is not qualified to serve as a representative plaintiff.

The Opposition seeks to downplay Mr. Christiansen's misconduct, conceding it was "Misguided in hindsight" but arguing that "the case law . . . would permit him to contact Assertio Or its representatives" and that doing so would be consistent with "a representative plaintiff's dut[y] [to] 'evaluat[e] settlement opportunities." Opp. at 1, 2, 5 (citation omitted).

But Mr. Christiansen did ***not*** simply "'reach[ ] out to another party to the litigation to discuss the litigation.'" Opp. at 2 (quoting *Rekor Sys., Inc. v. Loughlin*, 2021 WL 2186439, at *1 (S.D.N.Y. May 28, 2021)). He repeatedly disclosed confidential settlement communications to a third party.

> **1)** *ASSERTION HOLDINGS / WEBSITE:* *https://www.assertiotx.com/*
>
>> **a)** *Scroll Down to "MANAGEMENT"*
>> *https://www.assertiotx.com/about/management/*
>>
>> **b)** *Click Contact Us on the left side*
>> *https://www.assertiotx.com/about/contact-us/*
>>
>> **c)** *Scroll part way down / On the right side of the page*
>> *"HOW TO REACH US"*
>>
>> **d)** *INVESTOR RELATIONS: investors@assertiotx com*
>> *It says nothing about Darrow & Associates*
>>
>> **e)** *When you click on investor@assertiotx com, your Outlook opens a E Mail addressed to " investor@assertio com , Thus the Representatives contacted are within the purview of Assertio Holdings and as Representatives and confidants to the CEO and top management positions are aware of what is happening in all cases being litigated against Assertio Holdings.*
>>
>> **f)** *There is simply no deliberate attempt to go outside of the sphere of person(s)entitled to know about any negotiations in progress, unless you want to exclude the CEO and his circle of confidants.*
>
> **2)** *As a shareholder in Assertio Holdings I have a Protected Right under the US Constitution, 1ˢᵗ Amendment to attempt to contact Assertio Management.*
>
>> **a)** *The share price of Assertio since the inception of multiple lawsuit has fallen from $6.50 + a share to under $1.00 and is in violation of the NASDAQ listing requirement of a minimum share price of $1.00.*

Thus, it is irrelevant that the "rules of professional conduct do 'not prohibit a represented party from reaching out directly to another represented party

> **1)** *Completely Relevant, James Beha, attempts to dismiss the protections here as well.*

.'" Opp. at 2 (quoting *In re*
*Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 2201388, at *4 (S.D.N.Y. June 1, 2021)).₁
₁ The court's decision in *Turquoise Hill* does not suggest that Mr. Christiansen's conduct here was appropriate. In
*Turquoise Hill*, the lead plaintiff (Pentwater)—an institutional investor that remained the company's largest minority
shareholder—had been "pursu[ing] its rights as a . . . current investor[ ]" to "rais[e] questions in public shareholder
forums.'" 2021 WL 2201388, at *3 (internal quotation marks omitted). In denying the defendants' motion to
"direct[ ] Pentwater to cease all communications with Turquoise Hill," Judge Liman noted that the "Rules of
Professional Conduct permit party-to-party communications." *Id.* at *3, 8.


Case 1:22-cv-10292-VEC Document 132 Filed 11/25/24 Page 4 of 10

Although Mr. Christiansen now says he "mistakenly believ[ed] that he was
communicating directly with Assertio management," Opp. at 2, he provides no plausible
explanation for this purported "mistake." He does not explain whether he understood his
confidentiality obligations or why he thought sending an email disclosing confidential settlement
discussions to jdarrow@darrowir.com could possibly be consistent with those obligations. Nor
does he explain why he apparently sought to initiate "direct" settlement discussions with
Assertio without first disclosing his plans to his counsel.




 Mr. Christiansen violated his confidentiality obligations and disclosed confidential settlement
communications to a third party. That conduct is disqualifying.

> 1) ***There is simply no deliberate attempt to go outside of the sphere of person(s) entitled to
> know about any negotiations in progress, unless you want to exclude the CEO and his
> circle of confidants.***

>> b) ***As a shareholder in Assertio Holdings I have a Protected Right under the US
>> Constitution, 1ˢᵗ Amendment to attempt to contact Assertio Management.***

>> c) ***The share price of Assertio since the inception of multiple lawsuits has fallen
>> from $6.50 + a share to under $1.00 and is in violation of the NASDAQ listing
>> requirement of a minimum share price of $1.00.***


Mr. Christiansen's duty to "evaluat[e] settlement opportunities" cannot justify his
conduct, either. *See* Opp. at 5 (internal quotation marks omitted). To the contrary, he admits
that he did not even attend or participate in the parties' mediation, Christiansen Decl. ¶ 6 (ECF
No. 131-1),
> 1) ***Steven B Christiansen, opted not to travel due to being disabled from severe spine
> injury that left him with a permanent painful un-curable nerve disorder known as
> Aracnoidtitus. Making long periods of sitting on a plane almost impossible. This was
> discussed in advance with counsel.***
> 2)
> ***https://www.ncbi.nlm.nih.gov/books/NBK555973/***

When he should have been supervising Lead Counsel and evaluating potential
settlements in his self-proclaimed role as "[e]xemplary Lead Plaintiff," Opp. at 3.

> 1) ***Steven B Christiansen kept in close phone contact the day of mediation.***

Despite efforts to downplay Mr. Christiansen's misconduct, Lead Counsel's actions—

requiring Mr. Christiansen to confirm in writing that he will "not discuss the Action with anyone other than [his] attorneys" and recruiting a replacement plaintiff—show a clear understanding of its significance. *See* Christiansen Decl. ¶ 10 (ECF No. 131-1). If the law did, in fact, permit Mr. Christiansen's communications, as the Opposition suggests, Opp. at 2, there would be no reason for Mr. Christiansen to promise not to do it again. Nor would Lead Counsel have found it necessary to get that promise in writing in order to "reassure the Court." *Id.*

As to the attempted addition of Mr. Ayoub as a new lead plaintiff, the Opposition disingenuously argues that "Courts routinely allow lead plaintiffs to add class representatives at

Case 1:22-cv-10292-VEC Document 132 Filed 11/25/24 Page 5 of 10
3
the class certification stage of litigation." *Id.* at 4. Those cases, however, involve "the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004).2 But this is not a "routine" case of adding representation to address standing concerns.

The Opposition concedes that Mr. Ayoub was added to address concerns about Mr. Christiansen's conduct, not "to aid . . . in representing [the] class." *See* Opp. at 7 n.5.3

Lead Counsel's urgency in identifying a replacement plaintiff and filing a new complaint within a week of learning about Mr. Christiansen's misconduct should be recognized for what it is: an acknowledgement that Mr. Christiansen's actions disqualify him from continued service as a fiduciary for the class.

> *1) **James Beha continues in his attempt to mislead the court, makes false representations and attempts control the narrative without impute from the Lead Plaintiff.***

### B. Mr. Christiansen's Fitness to Serve as Lead Plaintiff Is in Serious Doubt

In response to the revelation of Mr. Christiansen's writings about the Columbine tragedy, the Opposition argues that Mr. Christiansen's "personal beliefs are irrelevant;" that "Defendants cherry-pick from Mr. Christiansen's website posting from 2016," but "do not dispute or challenge his veracity and credibility;"

> *1) **The US DOJ-OFFICE OF THE INSPECTOR GENERAL DOES NOT CONTEST THE WEBSITE : columbinecoverup com***
>
> *a) **https://columbinecoverup.com/***
>
> *b) **The information presented on the website is all in possession of the US DOJ- Civil Rights Division, The Criminal Division, The Public Integrity Division, Two (2) offices of The US Attorney's Offices in Washington, DC and was forwarded to The Office of The Inspector General for Prosecution.***
>
> *c) **James Beha attempts to mis-lead the court once again, by presenting false statements and lies and false claims concerning whether Steven B Christiansen is fit to serve as Lead Plaintiff.***

and that "mainstream media outlets and authors have published stories articulating similar theories." *See* Opp. at 5-6 (initial capitalization omitted).
2 For example, in *Hevesi v. Citigroup*, after the defendants argued that the lead plaintiff "lack[ed] standing" to bring

certain claims because it had "not purchase[d] bonds in [the] offering[s]," the court permitted the lead plaintiff to "cure[ ]" its "deficiencies . . . through the appointment of [additional] named plaintiffs" who had purchased in the offerings. 366 F.3d at 81-82. Similarly, in *In re NYSE Specialists Securities Litigation*, the class included both purchasers through the NYSE's electronic order entry system, "SuperDOT," and purchasers through large orders not facilitated by SuperDOT. 240 F.R.D. 128, 140 (S.D.N.Y. 2007). The court initially appointed co-lead plaintiffs—one with "the largest financial interest in market orders placed over SuperDOT" and another (CalPERS) with "the largest financial interest in large block transactions." *Id.* After granting a motion to disqualify the first, the court permitted CalPERS to continue serving as "the sole lead plaintiff," noting that "nothing in the statute would preclude CalPERS from adding named plaintiffs and class representatives as needed to adequately and effectively represent all of the interests of the purported class, including those of the absent SuperDOT members." *Id.* at 141. ₃ Lead Counsel claims to have filed the *Ayoub* complaint because "Defendants [were] creating a storm over Mr. Christiansen." Opp. at 7 n.5. But, as of October 25 (when Kaplan Fox filed the *Ayoub* complaint), defense counsel had merely informed Kaplan Fox of Mr. Christiansen's improper communications, asked them to ensure it would not happen again, and "reserve[d] all rights." Defendants had not "creat[ed] a storm"; Lead Counsel concluded on their own that Mr. Christiansen's conduct compromised his ability to serve as a representative plaintiff.

4

These arguments do not overcome the serious concerns about Mr. Christiansen's fitness raised by writings about the so-called "Columbine Commission."

  **1) _Steven B Christiansen, the founder of The Columbine Commission worked with many different divisions of US Department of Justice to advance the case to prosecution with the Office of the Inspector General_**

    **a) _Steven B Christiansen was the lead witness in a developing case over the cover up pertaining to the Columbine High School Massacre._**

    **b) _Here as well, James Beha attempts to mislead the court with lies._**

The "Columbine Commission" and Mr. Christiansen's writings about the Columbine tragedy are plainly relevant to this action because Mr. Christiansen himself invoked "The Columbine Commission" in his communications with Darrow:

"+++ Right now, The Columbine Commission, has money, working capital tied up in the suit. . . Loss of the use of this working capital for a couple of years . . .

  **1) _Steven B Christiansen has in years past and present funded many projects than have a beneficial impact on society. The funding comes from proceeds gained from investing._**

Is the CEO really interested in ripping off The Columbine Commission . . . ??

    **a) _Steven B Christiansen asks the question of what kind of a citizen the CEO of Assertio Holding is?_**

+++ Can you arrange [*sic*] a phone conference; I would like to know firsthand, would management like to have investors re-cover their working capital or, are they really intent on trying to rip off investors, of the working capital..???"

Beha Decl. Ex. A at 4 (ECF 125-1). Indeed, Defendants only learned of Mr. Christiansen's "Columbine Commission" website—and have only raised it with the Court—because Mr. Christiansen wrote **last month** that "The Columbine Commission, has money, working capital tied up in the suit," suggesting that he views himself as acting on behalf of an unnamed party—

"The Columbine Commission"—in this action. The Opposition baldly asserts that Mr. Christiansen's "Columbine Commission" website is irrelevant.

Opp. at 5-6. But the Opposition fails to explain Mr. Christiansen's reference to "The Columbine Commission" having money tied up in this action or his understanding of the Columbine Commission's role in this action.

As for Mr. Christiansen's argument that Defendants "cherry-pick" from his "affidavit" but "do not dispute or challenge his veracity and credibility,"

Opp. at 5, the Court can review for itself Mr. Christiansen's 20,000-word "affidavit" to determine its "veracity" and "credibility."

*See* Beha Decl. Ex. E (ECF No. 125-5). Defendants respectfully submit that the contents of Mr. Christiansen's Columbine Commission affidavit and his conduct in this action cast serious doubt on his declaration that he is "of sound mind." Christiansen Decl. ¶ 12 (ECF No. 131-1).

1) ***Can James Beha file an affidavit with the DOJ and submit evidence that the entire DOJ is mentally impaired for all the years that the DOJ worked with Steven B Christiansen and The Columbine Commission?***

    a) ***Can James Beha submit to taking a polygraph test to prove that he is right in accusing the DOJ and Steve B Christiansen of being wrong?***

At a bare minimum, the fact that Mr. Christiansen apparently views himself as acting on the Columbine Commission's behalf—which Mr. Christiansen failed to disclose in his lead-plaintiff Application—casts further doubt on his fitness to serve as lead plaintiff.

1) ***The court should hold James Beha accountable here for his false statements. His lies to the court.***

    a) ***The United States Department of Justice (DOJ) was introduced to The Columbine Commission by Steven B Christiansen***

    b) ***State of Colorado, Attorney General Ken Salazar was motivated by Steven B Christiansen to re-open the investigation into The Columbine High School Massacre & Cover-Up***

    c) ***Colorado Attorney General, Ken Salazar formed The State of Colorado-Columbine Commission, after reviewing documents and new discoveries that had been made by Steven B Christiansen & The Columbine Commission.***

## II. THE COURT SHOULD NOT PERMIT MR. CHRISTIANSEN AND HIS COUNSEL TO CHOOSE HIS REPLACEMENT

1) ***Steven B Christiansen is not choosing a new lead plaintiff or counsel.***

    a) ***Steven B Christiansen has no intention of stepping down or resigning.***

    b) ***As a shareholder in both companies, SPPI & ASRT I have right to contact the management of a company I own shares in.***

c) *I have a protected right to talk to Assertio as Guaranteed under the 1st Amendment of the US Constitution.*

d) *James Beha has lied to the court, mis-represented facts to the court all in an attempt to get lead plaintiff Steven B Christiansen removed.*

e) *James Beha has attempted to violate the protections of the 1st Amendment of the US Constitution in his attempt to replace Steven B Christiansen as lead plaintiff.*

f) *James Beha has no legal right or justification to attempt to interfere with Steven B Christiansen's right to contact the management of a company he owns shares.*

g) *Steven B Christiansen's personal record is exemplary. He led the formation of The Columbine Commission and the re-opening of the investigation when no one else in the State of Colorado did. That would include, The Governor, Congress Members, Senators, Judges, Law Enforcement, ext.*

Although Defendants take no position as to the precise process the Court should employ to select a replacement lead plaintiff, the Court "should not 'simply assume[ ] that [lead counsel's] choice of [substitute] lead plaintiff is the most adequate plaintiff.'" *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 326 (S.D.N.Y. 2012) (alterations in original).[4]

The PSLRA directs the Court to select the lead plaintiff, and the lead plaintiff "subject to the approval of the court, [to] select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). Permitting Lead Counsel to select the lead plaintiff would turn this process on its head, directly contravening the PSLRA's core purpose: "to prevent lawyer-driven litigation." *In re Tarragon Corp. Sec. Litig.*, 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).

The court's decision in *Turquoise Hill* is instructive. After the court-appointed lead plaintiff (Pentwater) asserted claims in Turquoise Hill's Canadian insolvency proceeding, it moved for an order permitting it to continue to serve as lead plaintiff, while adding an additional lead plaintiff "to temper any concerns" about potential conflicts. 2022 WL 17884165, at *8 (S.D.N.Y. Dec. 23, 2022).

The court permitted Pentwater to continue as lead plaintiff—

[4] *See also In re Snap Inc. Sec. Litig.*, 394 F. Supp. 3d 1156, 1158 (C.D. Cal. 2019) ("'[M]erely accepting counsel's suggestion with input from no other potential lead plaintiff is contrary to the PSLRA.'" (citation omitted)); *In re Neopharm, Inc. Sec. Litig.*, 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004) ("That approach, however, simply assumes that Milberg Weiss' choice of lead plaintiff is the most adequate plaintiff. The better approach is to grant Larson's motion for withdrawal as lead plaintiff and allow for any prospective lead plaintiffs to make a motion for appointment."); *In re Nutanix, Inc. Sec. Litig.*, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) ("[I]t is the court's role to appoint a substitute lead plaintiff, not [the prior lead plaintiff's] or his counsel's.").

concluding that any potential conflict should be assessed "at the time of class certification"—but denied Pentwater's request to add another lead plaintiff. *Id.* at *8-9.

The court explained that,"in the event that Pentwater is found not adequate under Rule 23, the most appropriate procedure would be to allow other putative class members . . . to move for appointment as lead plaintiff upon Pentwater's withdrawal." *Id.* at *9. The same is true here.

## III. THE STAY SHOULD REMAIN IN PLACE UNTIL THE COURT APPOINTS A NEW LEAD PLAINTIFF

As the Court recognized when it entered a stay pending resolution of this motion, discovery cannot proceed without a court-appointed lead plaintiff in place. *See* ECF No. 129.

1) ***The court already has a court appointed lead plaintiff. Steven B Christiansen.***

   a) ***Steven B Christiansen has no intention of resigning, especially in this case under these circumstances.***

   b) ***James Beha has repeatedly lied to the court, deliberately, in a vain attempt to have Steven B Christiansen removed as lead plaintiff.***

If the Court disqualifies Mr. Christiansen, the stay should remain in place until a replacement lead plaintiff is appointed.

1) ***The court cannot replace Steven B Christiansen for two (2) reasons.***

   a) ***Steven B Christiansen owned shares in both companies, Assertio Holding Inc and Spectrum Pharmaceuticals***

   b) ***The court cannot violate the protections of the US Constitution 1st Amendment***

Permitting Lead Counsel to select the lead plaintiff would turn this process on its head, directly contravening the PSLRA's core purpose: "to prevent lawyer-driven litigation." *In re Tarragon Corp. Sec. Litig.,* 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).

Potential new lead plaintiff either files a complaint or makes a motion to serve as lead plaintiff within 60 day of being provided notice of the lawsuit." (Cleaned up)).

*The 60 day period has come and gone. Nizar Sami Ayoub, did not file a formal filing of the intention to become the new lead plaintiff. A filing was never submitted*

## IIII. THE STAY SHOULD BE REMOVED IMMEDIATELY

   a) ***The Court Never Verified Any of The Lies And Assertions Made By James Beha***

   b) ***The Court Cannot Violate the US CONSTITUTION, The Protections of The 1st Amendment / The Right Of Free Speech / Unabridged***

   c) ***The Court Cannot Tell A Person(s) Who Owns Shares In A Company That They Cannot Contact That Company***

   d) ***This needs to be looked at the same as a coin. There are two (2) sides to every coin here one side is Spectrum Pharma, the other side is Assertio Holding Inc***

e) *I was also sounding the alarm to the effects that multiple lawsuits are having on the share price and that the best cousr of action is to resolve these law suits before anymore law suits could be filed. History here proves me correct here.*

*Respectfully Requested: Steven B Christiansen*

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

*JUDGE CAPRONI*

.*The trouble with Jeff Campisi begins to get obvious in May 2024. I called Jeff and asked him to set a conference with the defendant's attorney James Beha. This was to determine what the defense and defendants are thinking in terms of settlement.*

*Do they want to make an Ernst effort to settle or do we just move ahead, do depositions and set a trial date, run up the legal cost to Assertio Holdings, because Baker Botts & James Beha are leading them on with false hopes. This is not a complicated case. Spectrum Pharma got caught, mis-leading investors and the FDA about patient enrollment. They did not have data from a successful phase 3 study, yet thought they could get an early approval from the FDA This is insanity. Assertio had positive earnings report and is obviously profiting from the purchase of Spectrum Pharma. The drug pipeline of products has been a good earner.*

*\* James Beha, talked Jeff Campisi into waiting until October for a settlement conference.*

*+ I protested against this and asked Jeff Campisi every month for six (6) months to set a phone conference. Jeff Campisi refused all my requests. He only did what James Beha wanted him to do. At the October 2024 conference James Beha did not even come close to settling*

*\*\*\* As a share holder in Assertio Holding as well and watching the share price drop from $6.50 to $00.65 a share, I decided I was time to contact management at Assertio to discuss the logic of settling the suit before any more suits could be filed, causing even more damage and expense. I contacted Assertio Holdings and was directed to contact Investor relations as I did. The website does not disclose that you will be re-directed out of Assertio to an outside source Darrow & Associates. This is not disclosed on the web site. As Investor relations, you*

*would assume they are confidants of top management and are therefore privy to all*

*information in business and legalities. After all, they are called "INVESTOR RELATIONS"*

*November 2024, Baker Botts, James Beha, file to have me removed as lead plaintiff.*

*Jeff Campisi did not counter attack their attack strong enough.*


*In a phone conference with Nizar Sami Ayoub it was discussed that this was Baker Botts first*

*attack, and that since it did not have much merit….They had to get personal.*

*\*\*\* When the attack lacks merit…Scum Bags get personal as James Beha did in attacking The*

*Columbine Commission.*

*\*Jeff Campisi has refused to address the lies and deliberate attempt by James Beha to*

*persuade the court to dismiss me as lead plaintiff.*

*\* Jeff Campisi has on every request refused to include in any filing these points of rebuttal.*

*Best Regards: Steven B Christiansen*

AUGUST 4, 2025

STEVEN B CHRISTIANSEN
Steven.paralex@gmail com

RE: 1:22-CV-10292/ Steven B Christiansen VS Spectrum Pharmaceuticals INC

**TO THE HONORABLE JUDGE, VALERIE CAPRONI,**

**_You're Honor, with all due respect to the courts and a court order,_**

**_* I have no choice but to send this letter and advise the court that my attorney Jeff Campisi_**

**_has for the past one and a half years (1 ½ yrs) refused to do anything I have requested dating_**

**_back to May 2024._**

**_*** I HAD ABSOLUTLY NO INPUT ON THE LETTER FOR A CONFRENCE !_**

**_***DOCKET 142, I HAD NO INPUT..ONLY JEFF CAMPISI_**

**_*** I HAVE NO IDEA WHAT WAS REQUESTED ???_**

**_* I had asked my attorney Jeff Campisi to include additional information. Dating back to_**

**_November 25 2024 when Document 132 was filed. The Motion to Disqualify Steven B_**

**_Christiansen as lead plaintiff._**

**_*Jeff Campisi has refused to address the lies and deliberate attempt by James Beha to_**

**_persuade the court to dismiss me as lead plaintiff._**

**_* Jeff Campisi has on every request refused to include in any filing these points of rebuttal._**

**_* Jeff Campisi has refused to include factually truthful information in any filing until I_**

**_conceded to omitting the information that I think is critical._**


**_***Jeff Campisi will not file anything requested by the Class of Investors/ Plaintiffs /_**

**_Represented by Steven B Christiansen / Appointed by this court to be the Lead Plaintiff._**

**_*** I am confident that upon reading my information you will understand that it was nessacery to do so and that I am being Silenced from having critical information added to the  Memorandum of Law in Support of Lead Plaintiff's Motion to Vacate the Stay of All Proceedings._**

## DOCUMENT 132 / FILED / 11/25/24

## The Stay of All Proceedings Should Never Have Been Granted.

\*\*\* The court only accepted the lies of James Beha and never made an attempt to verify otherwise.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION DISQUALIFY LEAD PLAINTIFF STEVEN B. CHRISTIANSEN AND FOR A STAY OF PROCEEDINGS PENDING APPOINTMENT OF A SUBSTITUTE LEAD PLAINTIFF**

**1.  THE COURT SHOULD DISQUALIFY MR. CHRISTIANSEN FROM SERVING AS LEAD PLAINTIFF**

**A.  Mr. Christiansen's Misconduct Is Disqualifying**

There is no dispute Mr. Christiansen went behind his counsel's back; repeatedly
Contacted a third-party consultant to Spectrum's parent company, Assertio; disclosed (and
Grossly mischaracterized) the parties' confidential settlement communications; and sought to
Arrange a one-on-one "phone conference" to discuss settlement directly with Assertio's CEO.

*1)  **As a shareholder in both companies, SPPI & ASRT I have right to contact the management of a company I own shares in.***

*a)  **I have a protected right to talk to Assertio as Guaranteed under the 1st Amendment of the US Constitution.***

*b)  **Special Note, I Have Used The Cornell School of Law, Legal Information Institute since I Founded The Columbine Commission in 1999 for Legal Information, Statutes and correct interpretations of The Constitution of The United States***

   *https://www.law.cornell.edu/constitution/first_amendment#:~:text=Congress%20shall%20make%20no%20law,for%20a%20redress%20of%20grievances.*

c)  Amendment I

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof**; or abridging the freedom of speech,** or of the press; or the right of the people peaceably to assemble, **and to petition the government for a redress of grievances.**

**d)** *James Beha makes repeated attempts to Violate the Protections of the US Constitution and Abridge The Freedom of Speech of Steven B Christiansen with this Motion to Disqualify the Lead Plaintiff.*

**2)** *This letter will serve as my "PETITION" for a REDRESS of GRIEVENCES*

The Opposition's failure to acknowledge the seriousness of this conduct confirms that Mr. Christiansen is not qualified to serve as a representative plaintiff.

The Opposition seeks to downplay Mr. Christiansen's misconduct, conceding it was "Misguided in hindsight" but arguing that "the case law . . . would permit him to contact Assertio Or its representatives" and that doing so would be consistent with "a representative plaintiff's dut[y] [to] 'evaluat[e] settlement opportunities." Opp. at 1, 2, 5 (citation omitted).

But Mr. Christiansen did *not* simply "'reach[ ] out to another party to the litigation to discuss the litigation.'" Opp. at 2 (quoting *Rekor Sys., Inc. v. Loughlin*, 2021 WL 2186439, at *1 (S.D.N.Y. May 28, 2021)). He repeatedly disclosed confidential settlement communications to a third party.

**1)** *ASSERTION HOLDINGS / WEBSITE: https://www.assertiotx.com/*

**a)** *Scroll Down to "MANAGEMENT"*
*https://www.assertiotx.com/about/management/*

**b)** *Click Contact Us on the left side*
*https://www.assertiotx.com/about/contact-us/*

**c)** *Scroll part way down / On the right side of the page*
*"HOW TO REACH US"*

**d)** *INVESTOR RELATIONS: investors@assertiotx com*
*It says nothing about Darrow & Associates*

**e)** *When you click on investor@assertiotx com, your Outlook opens a E Mail addressed to " investor@assertio com , Thus the Representatives contacted are within the purview of Assertio Holdings and as Representatives and confidants to the CEO and top management positions are aware of what is happening in all cases being litigated against Assertio Holdings.*

**f)** *There is simply no deliberate attempt to go outside of the sphere of person(s)entitled to know about any negotiations in progress, unless you want to exclude the CEO and his circle of confidants.*

**2)** *As a shareholder in Assertio Holdings I have a Protected Right under the US Constitution, 1st Amendment to attempt to contact Assertio Management.*

**a)** *The share price of Assertio since the inception of multiple lawsuit has fallen from $6.50 + a share to under $1.00 and is in violation of the NASDAQ listing requirement of a minimum share price of $1.00.*

Thus, it is irrelevant that the "rules of professional conduct do 'not prohibit a represented party from reaching out directly to another represented party

**1)** *Completely Relevant, James Beha, attempts to dismiss the protections here as well.*

.'" Opp. at 2 (quoting *In re
Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 2201388, at *4 (S.D.N.Y. June 1, 2021)).₁
₁ The court's decision in *Turquoise Hill* does not suggest that Mr. Christiansen's conduct here was appropriate. In
*Turquoise Hill*, the lead plaintiff (Pentwater)—an institutional investor that remained the company's largest minority
shareholder—had been "pursu[ing] its rights as a . . . current investor[ ]" to "rais[e] questions in public shareholder
forums.'" 2021 WL 2201388, at *3 (internal quotation marks omitted). In denying the defendants' motion to
"direct[ ] Pentwater to cease all communications with Turquoise Hill," Judge Liman noted that the "Rules of
Professional Conduct permit party-to-party communications." *Id.* at *3, 8.

Case 1:22-cv-10292-VEC Document 132 Filed 11/25/24 Page 4 of 10

Although Mr. Christiansen now says he "mistakenly believ[ed] that he was
communicating directly with Assertio management," Opp. at 2, he provides no plausible
explanation for this purported "mistake." He does not explain whether he understood his
confidentiality obligations or why he thought sending an email disclosing confidential settlement
discussions to jdarrow@darrowir.com could possibly be consistent with those obligations. Nor
does he explain why he apparently sought to initiate "direct" settlement discussions with
Assertio without first disclosing his plans to his counsel.

 Mr. Christiansen violated his confidentiality obligations and disclosed confidential settlement
communications to a third party. That conduct is disqualifying.

1) ***There is simply no deliberate attempt to go outside of the sphere of person(s) entitled to
know about any negotiations in progress, unless you want to exclude the CEO and his
circle of confidants.***

   b) ***As a shareholder in Assertio Holdings I have a Protected Right under the US
Constitution, 1ˢᵗ Amendment to attempt to contact Assertio Management.***

   c) ***The share price of Assertio since the inception of multiple lawsuits has fallen
from $6.50 + a share to under $1.00 and is in violation of the NASDAQ listing
requirement of a minimum share price of $1.00.***

Mr. Christiansen's duty to "evaluat[e] settlement opportunities" cannot justify his
conduct, either. *See* Opp. at 5 (internal quotation marks omitted). To the contrary, he admits
that he did not even attend or participate in the parties' mediation, Christiansen Decl. ¶ 6 (ECF
No. 131-1),
   1) ***Steven B Christiansen, opted not to travel due to being disabled from severe spine
injury that left him with a permanent painful un-curable nerve disorder known as
Aracnoidtitus. Making long periods of sitting on a plane almost impossible. This was
discussed in advance with counsel.***
   2)
***https://www.ncbi.nlm.nih.gov/books/NBK555973/***

When he should have been supervising Lead Counsel and evaluating potential
settlements in his self-proclaimed role as "[e]xemplary Lead Plaintiff," Opp. at 3.

   1) ***Steven B Christiansen kept in close phone contact the day of mediation.***

Despite efforts to downplay Mr. Christiansen's misconduct, Lead Counsel's actions—

requiring Mr. Christiansen to confirm in writing that he will "not discuss the Action with anyone other than [his] attorneys" and recruiting a replacement plaintiff—show a clear understanding of its significance. *See* Christiansen Decl. ¶ 10 (ECF No. 131-1). If the law did, in fact, permit Mr. Christiansen's communications, as the Opposition suggests, Opp. at 2, there would be no reason for Mr. Christiansen to promise not to do it again. Nor would Lead Counsel have found it necessary to get that promise in writing in order to "reassure the Court." *Id.*

As to the attempted addition of Mr. Ayoub as a new lead plaintiff, the Opposition disingenuously argues that "Courts routinely allow lead plaintiffs to add class representatives at

Case 1:22-cv-10292-VEC Document 132 Filed 11/25/24 Page 5 of 10

3

the class certification stage of litigation." *Id.* at 4. Those cases, however, involve "the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004).[2] But this is not a "routine" case of adding representation to address standing concerns.

The Opposition concedes that Mr. Ayoub was added to address concerns about Mr. Christiansen's conduct, not "to aid . . . in representing [the] class." *See* Opp. at 7 n.5.[3]

Lead Counsel's urgency in identifying a replacement plaintiff and filing a new complaint within a week of learning about Mr. Christiansen's misconduct should be recognized for what it is: an acknowledgement that Mr. Christiansen's actions disqualify him from continued service as a fiduciary for the class.

   1) ***James Beha continues in his attempt to mislead the court, makes false representations and attempts control the narrative without impute from the Lead Plaintiff.***

   **B. Mr. Christiansen's Fitness to Serve as Lead Plaintiff Is in Serious Doubt**

In response to the revelation of Mr. Christiansen's writings about the Columbine tragedy, the Opposition argues that Mr. Christiansen's "personal beliefs are irrelevant;" that "Defendants cherry-pick from Mr. Christiansen's website posting from 2016," but "do not dispute or challenge his veracity and credibility;"

   1) ***The US DOJ-OFFICE OF THE INSPECTOR GENERAL DOES NOT CONTEST THE WEBSITE : columbinecoverup com***

   a) ***https://columbinecoverup.com/***

   b) ***The information presented on the website is all in possession of the US  DOJ- Civil Rights Division, The Criminal Division, The Public Integrity Division, Two (2) offices of The US Attorney's Offices in Washington, DC and was forwarded to The Office of The Inspector General for Prosecution.***

   c) ***James Beha attempts to mis-lead the court once again, by presenting false statements and lies and false claims concerning whether Steven B Christiansen is fit to serve as Lead Plaintiff.***

and that "mainstream media outlets and authors have published stories articulating similar theories." *See* Opp. at 5-6 (initial capitalization omitted).

[2] For example, in *Hevesi v. Citigroup*, after the defendants argued that the lead plaintiff "lack[ed] standing" to bring

certain claims because it had "not purchase[d] bonds in [the] offering[s]," the court permitted the lead plaintiff to "cure[ ]" its "deficiencies . . . through the appointment of [additional] named plaintiffs" who had purchased in the offerings. 366 F.3d at 81-82. Similarly, in *In re NYSE Specialists Securities Litigation*, the class included both purchasers through the NYSE's electronic order entry system, "SuperDOT," and purchasers through large orders not facilitated by SuperDOT. 240 F.R.D. 128, 140 (S.D.N.Y. 2007). The court initially appointed co-lead plaintiffs— one with "the largest financial interest in market orders placed over SuperDOT" and another (CalPERS) with "the largest financial interest in large block transactions." *Id.* After granting a motion to disqualify the first, the court permitted CalPERS to continue serving as "the sole lead plaintiff," noting that "nothing in the statute would preclude CalPERS from adding named plaintiffs and class representatives as needed to adequately and effectively represent all of the interests of the purported class, including those of the absent SuperDOT members." *Id.* at 141.
3 Lead Counsel claims to have filed the *Ayoub* complaint because "Defendants [were] creating a storm over Mr. Christiansen." Opp. at 7 n.5. But, as of October 25 (when Kaplan Fox filed the *Ayoub* complaint), defense counsel had merely informed Kaplan Fox of Mr. Christiansen's improper communications, asked them to ensure it would not happen again, and "reserve[d] all rights." Defendants had not "creat[ed] a storm"; Lead Counsel concluded on their own that Mr. Christiansen's conduct compromised his ability to serve as a representative plaintiff.


Case 1:22-cv-10292-VEC Document 132 Filed 11/25/24 Page 6 of 10
4
These arguments do not overcome the serious concerns about Mr. Christiansen's fitness raised by writings about the so-called "Columbine Commission."

  1) ***Steven B Christiansen, the founder of The Columbine Commission worked with many different divisions of US Department of Justice to advance the case to prosecution with the Office of the Inspector General***

   a) ***Steven B Christiansen was the lead witness in a developing case over the cover up pertaining to the Columbine High School Massacre.***

   b) ***Here as well, James Beha attempts to mislead the court with lies.***

The "Columbine Commission" and Mr. Christiansen's writings about the Columbine tragedy are plainly relevant to this action because Mr. Christiansen himself invoked "The Columbine Commission" in his communications with Darrow:

"+++ Right now, The Columbine Commission, has money, working capital tied up in the suit. . . Loss of the use of this working capital for a couple of years . . .

  1) ***Steven B Christiansen has in years past and present funded many projects than have a beneficial impact on society. The funding comes from proceeds gained from investing.***

Is the CEO really interested in ripping off The Columbine Commission . . . ??

   a) ***Steven B Christiansen asks the question of what kind of a citizen the CEO of Assertio Holding is?***

+++ Can you arrange [*sic*] a phone conference; I would like to know firsthand, would management like to have investors re-cover their working capital or, are they really intent on trying to rip off investors, of the working capital..???"

Beha Decl. Ex. A at 4 (ECF 125-1). Indeed, Defendants only learned of Mr. Christiansen's "Columbine Commission" website—and have only raised it with the Court—because Mr. Christiansen wrote **last month** that "The Columbine Commission, has money, working capital tied up in the suit," suggesting that he views himself as acting on behalf of an unnamed party—

"The Columbine Commission"—in this action. The Opposition baldly asserts that Mr. Christiansen's "Columbine Commission" website is irrelevant.

Opp. at 5-6. But the Opposition fails to explain Mr. Christiansen's reference to "The Columbine Commission" having money tied up in this action or his understanding of the Columbine Commission's role in this action.

As for Mr. Christiansen's argument that Defendants "cherry-pick" from his "affidavit" but "do not dispute or challenge his veracity and credibility,"

Opp. at 5, the Court can review for itself Mr. Christiansen's 20,000-word "affidavit" to determine its "veracity" and "credibility."

*See* Beha Decl. Ex. E (ECF No. 125-5). Defendants respectfully submit that the contents of Mr. Christiansen's Columbine Commission affidavit and his conduct in this action cast serious doubt on his declaration that he is "of sound mind." Christiansen Decl. ¶ 12 (ECF No. 131-1).

1) ***Can James Beha file an affidavit with the DOJ and submit evidence that the entire DOJ is mentally impaired for all the years that the DOJ worked with Steven B Christiansen and The Columbine Commission?***

   a) ***Can James Beha submit to taking a polygraph test to prove that he is right in accusing the DOJ and Steve B Christiansen of being wrong?***

At a bare minimum, the fact that Mr. Christiansen apparently views himself as acting on the Columbine Commission's behalf—which Mr. Christiansen failed to disclose in his lead-plaintiff Application—casts further doubt on his fitness to serve as lead plaintiff.

1) ***The court should hold James Beha accountable here for his false statements. His lies to the court.***

   a) ***The United States Department of Justice (DOJ) was introduced to The Columbine Commission by Steven B Christiansen***

   b) ***State of Colorado, Attorney General Ken Salazar was motivated by Steven B Christiansen to re-open the investigation into The Columbine High School Massacre & Cover-Up***

   c) ***Colorado Attorney General, Ken Salazar formed The State of Colorado-Columbine Commission, after reviewing documents and new discoveries that had been made by Steven B Christiansen & The Columbine Commission.***

## II. THE COURT SHOULD NOT PERMIT MR. CHRISTIANSEN AND HIS COUNSEL TO CHOOSE HIS REPLACEMENT

1) ***Steven B Christiansen is not choosing a new lead plaintiff or counsel.***

   a) ***Steven B Christiansen has no intention of stepping down or resigning.***

   b) ***As a shareholder in both companies, SPPI & ASRT I have right to contact the management of a company I own shares in.***

c) ***I have a protected right to talk to Assertio as Guaranteed under the 1ˢᵗ Amendment of the US Constitution.***

d) ***James Beha has lied to the court, mis-represented facts to the court all in an attempt to get lead plaintiff Steven B Christiansen removed.***

e) ***James Beha has attempted to violate the protections of the 1ˢᵗ Amendment of the US Constitution in his attempt to replace Steven B Christiansen as lead plaintiff.***

f) ***James Beha has no legal right or justification to attempt to interfere with Steven B Christiansen's right to contact the management of a company he owns shares.***

g) ***Steven B Christiansen's personal record is exemplary. He led the formation of The Columbine Commission and the re-opening of the investigation when no one else in the State of Colorado did. That would include, The Governor, Congress Members, Senators, Judges, Law Enforcement, ext.***

Although Defendants take no position as to the precise process the Court should employ to select a replacement lead plaintiff, the Court "should not 'simply assume[ ] that [lead counsel's] choice of [substitute] lead plaintiff is the most adequate plaintiff.'" *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 326 (S.D.N.Y. 2012) (alterations in original).[4]

The PSLRA directs the Court to select the lead plaintiff, and the lead plaintiff "subject to the approval of the court, [to] select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). Permitting Lead Counsel to select the lead plaintiff would turn this process on its head, directly contravening the PSLRA's core purpose: "to prevent lawyer-driven litigation." *In re Tarragon Corp. Sec. Litig.,* 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).

The court's decision in *Turquoise Hill* is instructive. After the court-appointed lead plaintiff (Pentwater) asserted claims in Turquoise Hill's Canadian insolvency proceeding, it moved for an order permitting it to continue to serve as lead plaintiff, while adding an additional lead plaintiff "to temper any concerns" about potential conflicts. 2022 WL 17884165, at *8 (S.D.N.Y. Dec. 23, 2022).

The court permitted Pentwater to continue as lead plaintiff—

[4] *See also In re Snap Inc. Sec. Litig.*, 394 F. Supp. 3d 1156, 1158 (C.D. Cal. 2019) ("'[M]erely accepting counsel's suggestion with input from no other potential lead plaintiff is contrary to the PSLRA.'" (citation omitted)); *In re Neopharm, Inc. Sec. Litig.*, 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004) ("That approach, however, simply assumes that Milberg Weiss' choice of lead plaintiff is the most adequate plaintiff. The better approach is to grant Larson's motion for withdrawal as lead plaintiff and allow for any prospective lead plaintiffs to make a motion for appointment."); *In re Nutanix, Inc. Sec. Litig.*, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) ("[I]t is the court's role to appoint a substitute lead plaintiff, not [the prior lead plaintiff's] or his counsel's.").

concluding that any potential conflict should be assessed "at the time of class certification"—but denied Pentwater's request to add another lead plaintiff. *Id.* at *8-9.

The court explained that, "in the event that Pentwater is found not adequate under Rule 23, the most appropriate procedure would be to allow other putative class members . . . to move for appointment as lead plaintiff upon Pentwater's withdrawal." *Id.* at *9. The same is true here.

## III. THE STAY SHOULD REMAIN IN PLACE UNTIL THE COURT APPOINTS A NEW LEAD PLAINTIFF

As the Court recognized when it entered a stay pending resolution of this motion, discovery cannot proceed without a court-appointed lead plaintiff in place. *See* ECF No. 129.

1) *The court already has a court appointed lead plaintiff. Steven B Christiansen.*

    a) *Steven B Christiansen has no intention of resigning, especially in this case under these circumstances.*

    b) *James Beha has repeatedly lied to the court, deliberately, in a vain attempt to have Steven B Christiansen removed as lead plaintiff.*

If the Court disqualifies Mr. Christiansen, the stay should remain in place until a replacement lead plaintiff is appointed.

1) *The court cannot replace Steven B Christiansen for two (2) reasons.*

    a) *Steven B Christiansen owned shares in both companies, Assertio Holding Inc and Spectrum Pharmaceuticals*

    b) *The court cannot violate the protections of the US Constitution 1ˢᵗ Amendment*

 Permitting Lead Counsel to select the lead plaintiff would turn this process on its head, directly contravening the PSLRA's core purpose: "to prevent lawyer-driven litigation." *In re Tarragon Corp. Sec. Litig.*, 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).

Potential new lead plaintiff either files a complaint or makes a motion to serve as lead plaintiff within 60 day of being provided notice of the lawsuit." (Cleaned up)).

*The 60 day period has come and gone. Nizar Sami Ayoub, did not file a  formal filing of the intention to become the new lead plaintiff. A filing was never submitted*

## IIII. THE STAY SHOULD BE REMOVED IMMEDIATELY

    a) *The Court Never Verified Any of The Lies And Assertions Made By James Beha*

    b) *The Court Cannot Violate the US CONSTITUTION, The Protections of The 1ˢᵗ Amendment / The Right Of Free Speech / Unabridged*

    c) *The Court Cannot Tell A Person(s) Who Owns Shares In A Company That They Cannot Contact That Company*

    d) *This needs to be looked at the same as a coin. There are two (2) sides to every coin here one side is Spectrum Pharma, the other side is Assertio Holding Inc*

e) *I was also sounding the alarm to the effects that multiple lawsuits are having on the share price and that the best cours of action is to resolve these law suits before anymore law suits could be filed. History here proves me correct here.*

*Respectfully Requested: Steven B Christiansen*

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

**JUDGE CAPRONI**

The trouble with Jeff Campisi begins to get obvious in May 2024. I called Jeff and asked him to set a conference with the defendant's attorney James Beha. This was to determine what the defense and defendants are thinking in terms of settlement.

Do they want to make an Ernst effort to settle or do we just move ahead, do depositions and set a trial date, run up the legal cost to Assertio Holdings, because Baker Botts & James Beha are leading them on with false hopes. This is not a complicated case. Spectrum Pharma got caught, mis-leading investors and the FDA about patient enrollment. They did not have data from a successful phase 3 study, yet thought they could get an early approval from the FDA This is insanity. Assertio had positive earnings report and is obviously profiting from the purchase of Spectrum Pharma. The drug pipeline of products has been a good earner.

* James Beha, talked Jeff Campisi into waiting until October for a settlement conference.

+ I protested against this and asked Jeff Campisi every month for six (6) months to set a phone conference. Jeff Campisi refused all my requests. He only did what James Beha wanted him to do. At the October 2024 conference James Beha did not even come close to settling

*** As a share holder in Assertio Holding as well and watching the share price drop from $6.50 to $00.65 a share, I decided I was time to contact management at Assertio to discuss the logic of settling the suit before any more suits could be filed, causing even more damage and expense. I contacted Assertio Holdings and was directed to contact Investor relations as I did. The website does not disclose that you will be re-directed out of Assertio to an outside source Darrow & Associates. This is not disclosed on the web site. As Investor relations, you

*would assume they are confidants of top management and are therefore privy to all*

*information in business and legalities. After all, they are called "INVESTOR RELATIONS"*

*November 2024, Baker Botts, James Beha, file to have me removed as lead plaintiff.*

*Jeff Campisi did not counter attack their attack strong enough.*


*In a phone conference with Nizar Sami Ayoub it was discussed that this was Baker Botts first*

*attack, and that since it did not have much merit….They had to get personal.*

*\*\*\* When the attack lacks merit…Scum Bags get personal as James Beha did in attacking The*

*Columbine Commission.*

*\*Jeff Campisi has refused to address the lies and deliberate attempt by James Beha to*

*persuade the court to dismiss me as lead plaintiff.*

*\* Jeff Campisi has on every request refused to include in any filing these points of rebuttal.*

*Best Regards: Steven B Christiansen*

The Court received these letters from Mr. Christiansen via mail. Although Mr. Christiansen is no longer the Court-appointed Lead Plaintiff, he remains a party in this action; accordingly, if he is dissatisfied with his attorneys, he may direct them to withdraw their appearances. As the Court has already explained, however, the Court will not review Mr. Christiansen's *pro se* submissions so long as he is represented by counsel.

The Clerk of the Court is respectfully directed to mail a copy of this Order to Mr. Christiansen at P.O. Box 980202, Park City, UT 84098.

SO ORDERED.

8/15/2025

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE