**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVEN B. CHRISTIANSEN, on behalf of himself and a class of similarly situated investors,<br><br>Plaintiff,<br><br>v.<br><br>SPECTRUM PHARMACEUTICALS, INC., THOMAS J. RIGA, and FRANCOIS J. LEBEL,<br><br>Defendants. | Case No. 22-CV-10292 (VEC)<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM IN SUPPORT OF STEVEN DUNKLEBERGER'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPOINTMENT OF LEAD COUNSEL** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................................1

II.   FACTUAL BACKGROUND.................................................................................................2

III.  PROCEDURAL HISTORY ..................................................................................................4

IV.   ARGUMENT.........................................................................................................................7

    A.  Mr. Dunkleberger Should Be Appointed Lead Plaintiff.........................................7

        1.  Mr. Dunkleberger's Motion is Timely ........................................................8

        2.  Mr. Dunkleberger Has the "Largest Financial Interest"...............................8

        3.  Mr. Dunkleberger Otherwise Satisfies the Requirements of Rule 23 ...........8

    B.  The Court Should Approve Mr. Dunkleberger's Selection of Counsel ...................10

V.    CONCLUSION ...................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Amberber v. EHang Holdings Ltd.*, 2022 WL 409096 (S.D.N.Y. Feb. 10, 2022) ........................10

*Casper v. Song Jinan*, 2012 WL 3865267 (S.D.N.Y. Sept. 6, 2012) ............................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42  (S.D.N.Y. 1998).................................9

*Jolly Roger Offshore Fund LTD v. BKF Cap. Grp., Inc.,*  2007 WL 2363610 (S.D.N.Y. Aug. 16, 2007)..........................................................................................................................................9

*Moore v. Checkpoint Therapeutics, Inc.,* 2024 WL 3090623 (S.D.N.Y. June 21, 2024) ...............9

*Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018) ...........................................................................................................................................10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 252 (S.D.N.Y. 2003)......................9

**Statutes**

15 U.S.C. § 78t ...........................................................................................................................1

15 U.S.C. § 77z.............................................................................................................................5

15 U.S.C. § 78j ............................................................................................................................1

15 U.S.C. §78u .......................................................................................................1, 2, 5, 8, 11

17 C.F.R. § 240.10b-5 ..................................................................................................................1

Steven Dunkleberger ("Mr. Dunkleberger") respectfully submits this Memorandum of Law in support of his motion for: (1) appointment as Lead Plaintiff for the Class under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (2) approval of his selection of Block & Leviton LLP ("Block & Leviton") as Lead Counsel for the Class.

## I.    INTRODUCTION

This is a securities class action brought on behalf of investors who purchased or acquired shares of Spectrum Pharmaceuticals, Inc. ("Spectrum" or the "Company") common stock between May 12, 2022 and September 22, 2022, inclusive (the "Class Period"), against Defendants for violations of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

On August 4, 2025, the Court entered an Order disqualifying the originally appointed lead plaintiff and reopened the lead plaintiff appointment process to find a new "most adequate" plaintiff to lead this action. Dkt. 143 at 6-7. Under the PSLRA, the "most adequate" movant is the one that possesses the largest financial interest in the outcome of the action and otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Mr. Dunkleberger has timely filed a motion, believes has the largest known financial interest in the relief sought by the Class, asserts claims typical of all members of the Class, and will fairly and adequately represent the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). He should accordingly be appointed Lead Plaintiff.

Furthermore, Mr. Dunkleberger's selection of Block & Leviton—a firm whose attorneys have extensive experience prosecuting complex securities class actions—as Lead Counsel for the Class is reasonable and should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

1

Mr. Dunkleberger and his counsel are prepared to effectively and efficiently resume the prosecution of this case. Based on his significant financial interest and commitment as to overseeing this litigation, Mr. Dunkleberger respectfully requests that the Court enter an order appointing him Lead Plaintiff and approving his selection of Block & Leviton as Lead Counsel.

## II.    FACTUAL BACKGROUND

Spectrum is a biopharmaceutical company focused on targeted oncology therapies. ¶2.[1] Recently, the Company directed its efforts toward developing poziotinib ("pozi"), an orally administered drug intended to treat lung cancer patients with certain genetic mutations. ¶¶2, 3, 66.

Spectrum focused specifically on the FDA approval of pozi through the Accelerated Approval ("AA") pathway, an option for earlier approval available for drug candidates that treat a serious condition and fill an unmet medical need. ¶¶4, 5. AA is typically based on Phase 2 trial data results, which gather information about efficacy, optimal dosage levels, adverse effects, and safety risks. *Id.* For a drug candidate granted approval under the AA pathway, the FDA often requires follow-on Phase 3 randomized controlled studies, where the drug candidate is typically compared to a standard, FDA-approved treatment for the target disease to verify clinical benefit or lack of benefit, and study patients are randomly assigned to receive the drug candidate or the standard of care treatment. ¶3.

In November 2021, Spectrum filed a New Drug Application ("NDA") for pozi with the FDA, seeking AA based on results from one of its Phase 2 studies. ¶6. Spectrum also announced their Phase 3 confirmatory trial, which would be called the PINNACLE Study. *Id.* In February 2022, Spectrum announced that the FDA had accepted the Pozi NDA for review and would

---

[1] Citations to "¶___" refer to paragraphs of the Consolidated Class Action Complaint ("CC"). Dkt. 67.

approve or reject it by November 24, 2022. ¶8.

The Class Period begins on May 12, 2022.[2] On this day, Defendants Thomas J. Riga and Francois J. Lebel announced the design and details of the PINNACLE Study, specifically representing that patient enrollment had begun and the FDA and Spectrum agreed on the study design. ¶¶125-28. The Company's press release that day stated that "[p]atients are being randomized 2-to-1 into one of two treatment arms using 8mg of poziotinib orally administered BID (twice daily) versus 75mg/m2 of docetaxel administered intravenously every three weeks." ¶125. That same day, Spectrum hosted an earnings call with analysts and investors, and Defendant Lebel reiterated that "[p]atients are being randomized 2:1 into this global multicenter study . . ." ¶126. Defendants continued to make statements that patients were being "randomized" in the Pinnacle Study throughout the Class Period, and in August 2022, stated that Spectrum was "very active in opening site[s]." ¶¶138-41. These statements were found by the Court to be misleading at the pleadings stage because at the time of the statements, no patients had enrolled in the Pinnacle Study. *See* Dkt. 91 at 19.

Also on the May 12, 2022 earnings call, Defendant Riga stated that "that 16 QD is a safe and effective dose and obviously aligned with FDA on the confirmatory study to go with the 8-milligram BID. . ." ¶128. The Court held that Plaintiff adequately alleged that this statement was false and misleading because FDA officials had raised concerns about the dosages and requested additional dosing data to determine if the pozi dose was optimized. *See* ¶83; Dkt. 91 at 15.

The truth was partially revealed to the market on September 20, 2022, when the FDA released a Briefing Document ahead of its scheduled Oncologic Drugs Advisory Committee

---

[2] The putative Class Period and actionable statements outlined in this Background are taken from the allegations in the CC supporting claims that the Court upheld in the Order granting in part and denying in part Defendants' Motion to Dismiss. *See* Dkt. 91.

("ODAC") meeting. ¶105. The FDA briefing document revealed that the PINNACLE Study had not enrolled a single patient and that the FDA had repeatedly informed Defendants that Spectrum's dosing data was inadequate for determining the optimal dose for pozi. *Id.* In the aftermath of this news, the price of Spectrum's common stock declined from a closing price on September 19, 2022 of $1.06 per share, to close at $0.66 per share on September 20, 2022, a decrease of $0.40 per share or over 37%. ¶106.

The truth was further revealed on September 22, 2022, at the ODAC meeting. ¶108. In the meeting, an FDA official stated that "we did not come to any formal agreement about the 8-mg BID dose . . . it would be at their own risk to move forward with this incongruent dose [(8 mg BID)] . . . [Defendants] have missed several opportunities and several steps along the way to optimize this dose . . . [PINNACLE] has not enrolled any patients as of this month." ¶112. As a result of what was revealed in this meeting, Spectrum stock plummeted further, from a closing price on September 21, 2022 of $0.63 per share close at $0.43 per share on September 23, 2022, a decrease of $0.20 per share or approximately 31% on heavier than usual volume. ¶119.

Defendants' wrongful acts and omissions and the precipitous decline in the market value of Spectrum's securities caused Mr. Dunkleberger and other Class members to suffer significant losses and damages.

## III.    PROCEDURAL HISTORY

On December 5, 2022, the initial complaint in the Action was filed. Dkt. 1. The same day, counsel for plaintiff in the first-filed action caused a notice to be published pursuant to 15 U.S.C. § 78u-4(a)(3)(A) and 15 U.S.C. § 77z-1(a)(3)(A), announcing that a securities class action had been initiated against the Defendants. Two substantially similar actions were later filed on

4

December 19, 2022, and January 23, 2023, both of which were subsequently consolidated with the first-filed action. Dkt. 63.

Four plaintiffs moved for consolidation and appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(3). *See* Dkts. 19, 23, 24, 31. On March 21, 2023, the Court appointed Steven Christiansen ("Mr. Christiansen") to serve as Lead Plaintiff and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as Lead Counsel. Dkt. No. 63.

Mr. Christiansen filed a consolidated complaint on May 30, 2023. Dkt. 67. The complaint alleged that, during the Class Period of March 17, 2022 through September 22, 2022, Defendants made false or misleading representations and omissions regarding (1) Spectrum's optimization of pozi's dosage; (2) Spectrum and the FDA's alignment on the dosage regiment for pozi in the FDA-required Phase 3 randomized study; (3) patient enrollment in the same study; (4) the likelihood of the FDA approving pozi; (5) the FDA's patient enrollment threshold for approving pozi; and (6) the risks of achieving approval for pozi. Dkt. 67 at ¶¶87–104, 122–47.

On July 25, 2023, Defendants moved to dismiss the Action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 69. On January 23, 2024, the Court denied in part and granted in part Defendant's motion, upholding as actionable Spectrum's alleged misstatements regarding (1) alignment with the FDA on the pozi dosage regimen, and (2) patient enrollment. Dkt. 91. The Court dismissed as insufficiently pled Spectrum's statements regarding (1) pozi's dosage optimization; (2) the FDA's patient enrollment threshold for approval; (3) the risks of achieving approval for pozi; and (4) the likelihood of pozi being approved by the FDA. *Id.*

The Action proceeded to discovery. On February 15, 2024, the parties submitted a joint Discovery Plan, including a fact discovery deadline of January 23, 2025 and an expert discovery

deadline of March 24, 2025. Dkt. 99. Pursuant to the Court's order, the parties submitted monthly joint status reports from that point forward. Dkt. 98. The parties filed monthly joint status updates up until the case was stayed in November 2024. *See* Dkts. 102; 105-106; 111-115.

The updates indicated that discovery unfolded gradually with Defendants only beginning to produce documents by September 2024. By mid-March, Christiansen served a First Request for the Production of Documents to Defendants and subpoenas on non-parties the U.S. Food and Drug Administration ("FDA") and several research analysts. Dkt. 102. By mid-April, Christiansen served a First Set of Requests for Admission to Defendants and the FDA had begun to produce documents. Dkt. 105. In May, Defendants served their First Set of Requests for Production of Documents and First Set of Interrogatories to Plaintiff, and that Christiansen served subpoenas on additional non-parties. Dkt. 106. In June, the parties had agreed on an ESI protocol and were finalizing negotiations on the scope of Defendants' responses to Plaintiff's discovery requests. Dkt. 111. In July, third-party analysts continued to produce documents responsive to Christiansen's subpoena. Dkt. 112. In August, Defendants announced that they expected to begin their document production by the end of the month. Dkt. 113. The next month, the parties announced that Defendants had produced documents. Dkt. 114. By October 15, 2024, Defendants had produced additional documents. Dkt. 115.

Ten days after the parties' October update, Kaplan Fox filed a new class action complaint on behalf of Nizar Sami Ayoub that was materially identical to the Action. *See Ayoub v. Spectrum Pharmaceuticals, Inc.*, No. 24-CV-8138 (S.D.N.Y.). Five days later, on October 30, 2024, Christiansen filed a motion for class certification. Dkt. 116. Christiansen sought an order appointing both Christiansen and Ayoub as class representatives. Dkt. 117 at 1. The next day, the

6

Court ordered the parties in the Action and Ayoub to show cause why the two cases should not be consolidated. Dkt. 121.

On November 11, 2024, Defendants filed a Motion to Disqualify Lead Plaintiff Steven B. Christiansen and for a Stay for Proceedings Pending Appointment of a Substitute Lead Plaintiff. Dkt. 123. The Court stayed the case pending resolution of the Motion on November 6, 2024, Dkt. 129, and the action has remained stayed since.

On August 4, 2025, the Court granted Defendants' Motion and re-opened the lead plaintiff appointment process. Dkt. 143 at 5. The Court noted that no other movant from the original lead plaintiff process from which Christiansen was appointed was qualified to serve as lead plaintiff, and declined to replace Christiansen with Ayoub "as lead plaintiff in this case without judicial inquiry and without allowing other potential lead plaintiffs the opportunity to throw their hat in the ring." *Id.* at 8.

## IV.    ARGUMENT

### A.  Mr. Dunkleberger Should Be Appointed Lead Plaintiff

In its August 4, 2025 Order, the Court reopened the lead plaintiff appointment process to appoint the "most adequate" plaintiff. Dkt. 146 at 6. The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the person that:

(aa) has either filed the complaint or made a motion in response to a notice;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the

interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Mr. Dunkleberger meets these requirements and is not aware of any unique defenses that defendants could raise against him. Mr. Dunkleberger should therefore be appointed Lead Plaintiff.

### 1. Mr. Dunkleberger's Motion is Timely

In its August 4, 2025 Order reopening the lead plaintiff process, the Court required Kaplan Fox to publish notice of the reopening and for prospective lead plaintiffs to move for appointment 30 days following publication of notice. Dkt. 143 at 9. Notice was published by Kaplan Fox on August 25, 2025, and Mr. Dunkleberger has timely moved for appointment by September 24, 2025, thirty days after publication of such notice. As such, he is eligible for appointment as lead plaintiff.

### 2. Mr. Dunkleberger Has the "Largest Financial Interest"

As evidenced by his certification and loss chart, Mr. Dunkleberger purchased significant amounts of Spectrum securities and suffered approximately $18,223.24 in losses as a result of Defendants' violations of the federal securities laws. *See* Block Decl., Exs. B, C. To the best of Mr. Dunkleberger's counsel's knowledge, there are no other plaintiffs with a larger financial interest.

### 3. Mr. Dunkleberger Otherwise Satisfies the Requirements of Rule 23

In addition to possessing a significant financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). At this stage of the litigation, only a "preliminary showing" of typicality and adequacy is required. *Moore v. Checkpoint Therapeutics, Inc.,* 2024 WL 3090623, at *2 (S.D.N.Y. June 21, 2024) (citing *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003)). The typicality requirement is satisfied "where the claims arise from the same conduct from which the

other class members' claims and injuries arise." *Id.* (citing *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998)). "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (citing *Jolly Roger Offshore Fund LTD v. BKF Cap. Grp., Inc.,* 2007 WL 2363610, at *4 (S.D.N.Y. Aug. 16, 2007)).

Here, Mr. Dunkleberger's claims are typical of those of the Class because, like all Class members, he purchased Spectrum securities during the Class Period, suffered damages as a result of Defendants' false and misleading statements and omissions, and possesses claims against Spectrum and the Individual Defendants under the Exchange Act. *See, e.g., Casper v. Song Jinan*, 2012 WL 3865267, at *2 (S.D.N.Y. Sept. 6, 2012).

Mr. Dunkleberger is also adequate because his interests in the action are squarely aligned with the interests of the other members of the Class. Mr. Dunkleberger is highly incentivized to maximize the recovery for all Class members harmed by Defendants' misrepresentations and omissions based on, among other things, the substantial losses that he suffered. *See Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *3 (S.D.N.Y. Oct. 30, 2018) (movant's largest "financial interest should ensure vigorous advocacy on behalf of the class").

As set forth in greater detail below, Mr. Dunkleberger's adequacy is bolstered by his hiring of Block & Leviton—highly qualified counsel with significant success prosecuting federal securities class actions—to serve as lead counsel. *Amberber v. EHang Holdings Ltd.*, 2022 WL 409096, at *3 (S.D.N.Y. Feb. 10, 2022) (finding movant demonstrated *prima facie* adequacy because he "retained qualified, experienced counsel [Block & Leviton], he is not aware of any

conflict between his claims and those asserted on behalf of the putative class, and he submits that he has sufficient incentive to provide vigorous advocacy in this litigation").

Moreover, Mr. Dunkleberger fully understands the lead plaintiff's obligations towards absent class members under the PSLRA and is willing and able to ensure vigorous and efficient prosecution of this Action on behalf of the putative class. Mr. Dunkleberger has submitted a sworn declaration detailing his commitment to actively directing this litigation, rationale for seeking lead plaintiff status, and selection of Block & Leviton. Block Decl., Ex. D. Accordingly, Mr. Dunkleberger readily satisfies the adequacy requirement.

Because Mr. Dunkleberger (1) filed a timely motion, (2) has a substantial financial interest in the relief sought by the Class, and (3) demonstrated his typicality and adequacy, the Court should adopt the presumption that Mr. Dunkleberger is the "most adequate" plaintiff. Moreover, no movant can come forward to proof to show he is anything but typical of and adequate to represent the class.

### B.  The Court Should Approve Mr. Dunkleberger's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Mr. Dunkleberger has selected Block & Leviton, a firm with substantial experience in the prosecution of shareholder and securities class actions, to serve as lead counsel. Block Decl., Ex. E. As noted by one district court,

> While I recognize that each counsel is well qualified, I am particularly persuaded by [Block & Leviton's] experience in large securities class actions, such as its representation of plaintiffs in *In re BP Securities Litigation*, (S.D. Tex.), *In re Google Inc. Class C Shareholder Litig.* (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation* (N.D. Cal.). I find the experience garnered from such representations will benefit the shareholder in this suit.

> *Thieffry v. Synchronoss Tech., Inc.*, No. 3:17-cv-07173-FLW-LHG (D.N.J. 2018) (ECF

No. 21).

10

Notably, Block & Leviton has extensive experience litigating securities class actions involving pharmaceutical companies who have made alleged misrepresentations about their interactions with federal regulators. *See, e.g., Oklahoma Firefighters Pension and Retirement System v. Biogen Inc.*, No. 1:22-cv-10200-WGY (D. Mass) (still pending); *Pardi v. Tricida, Inc.*, No. 4:21-cv-00076-HSG (N.D. Cal.) ($14.25 million settlement pending final approval); *Odeh v. Immunomedics, Inc.*, No. 2:18-cv-17645-MCA-ESK (D.N.J.) ($40 million settlement); *Tomaszewski v. Trevena, Inc.*, No. 2:18-cv-04378-CMR (E.D. Pa.) ($8.5 million settlement). As such, the firm has developed deep expertise with the unique discovery issues and technical content that arises in this context.

Accordingly, Mr. Dunkleberger's selection of Block & Leviton as lead counsel is reasonable and should be approved.

## V.    CONCLUSION

For the foregoing reasons, Mr. Dunkleberger respectfully requests that the Court: (1) appoint Mr. Dunkleberger as Lead Plaintiff; and (2) approve his selection of Block & Leviton LLP as Lead Counsel.

DATED: September 24, 2025              Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
Jacob A. Walker (*pro hac vice* forthcoming)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com

*Counsel for Plaintiff*

11

<u>COMPLIANCE WITH L.C.R. 7.1(C)</u>

This memorandum of law contains 3,245 words, which is in compliance with L.C.R. 7.1(c).


<u>*/s/ Jeffrey C. Block*</u>
Jeffrey C. Block