**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVEN B. CHRISTIANSEN, on behalf of himself and a class of similarly situated investors,<br><br>            Plaintiff,<br><br>v.<br><br>SPECTRUM PHARMACEUTICALS, INC., THOMAS J. RIGA, and FRANCOIS J. LEBEL,<br><br>            Defendants. | Case No. 22-CV-10292 (VEC)<br><br>CLASS ACTION<br><br>**REPLY IN FURTHER SUPPORT OF STEVEN DUNKLEBERGER'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |

## I.    INTRODUCTION

Steven Dunkleberger is the only adequate movant seeking appointment as lead plaintiff. Nazir Sami Ayoub's past conduct—which he fails to even acknowledge in his Opposition—demonstrates his inadequacy and underscores the risk of future conflicts of interest with the Class. As such, Mr. Dunkleberger should be appointed as Lead Plaintiff and his selection of Block & Leviton as Lead Counsel should be approved. Mr. Ayoub's motion should be denied.[1]

## II.    ARGUMENT

As detailed in Mr. Dunkleberger's Opposition, Dkt. 172, at 3-4, Mr. Ayoub's prior conduct in this action indicates a "conflict between the proposed lead plaintiff and the members of the class," *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y.2007), and raises serious concerns regarding his "honesty and trustworthiness." *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). This conduct is "proof" of the non-speculative risk of inadequacy sufficient to rebut the statutory presumption in favor of the movant with the greatest financial loss. *Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016).

In his Opposition, Mr. Ayoub claims that "[t]here is no such proof in the record" and that "mere speculation regarding an alleged conflict of interest without specific evidentiary support of its existence is insufficient to rebut the presumption of adequacy." Dkt. 175, at 5 (citing *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 132-33 (S.D.N.Y. 2011)). But Mr. Dunkleberger relies on this Court's own record; this is specific evidentiary support.

---

[1] Mr. Dunkleberger does not oppose the Motion of Mr. Ayoub to the extent it requests Consolidation of the Related Actions. *See* Dkt. 152.

In its Order disqualifying Mr. Christiansen as lead plaintiff, this Court made findings of fact that evidence Mr. Ayoub's propensity to favor expediency over integrity and the putative class's best interests. The Court found as follows: on October 18, 2024, Mr. Christiansen sent multiple emails to an employee of Spectrum's parent company's third-party investor relations consultant, Darrow Associates. Dkt. 143, at 2. In these emails, he breached the Class's trust by discussing confidential settlement communications and information. *Id.* at 3. At this time, Defendants also discovered that Mr. Christiansen founded an organization known as the "Columbine Commission," which aims to expose an alleged conspiracy to conceal facts about the 1999 Columbine High School shooting. *Id.* at 1. Defense counsel informed Kaplan Fox of Mr. Christiansen's conduct on October 24, 2024 and Kaplan Fox responded with assurances that they had "taken measures to ensure that it does not happen again." *Id.* at 4.

Apparently recognizing that Mr. Christiansen's conduct was a risk to the class's interests, on October 25, Mr. Ayoub—also represented by Kaplan Fox—filed a complaint in this Court identical to the current action. *See Nizar Sami Ayoub v. Spectrum Pharmaceuticals, Inc.*, No. 1:24-cv-08138 (S.D.N.Y. Oct. 25, 2024), Dkt. 1 (filed Oct. 25, 2024). Despite this acknowledgement, five days later Mr. Ayoub requested the Court appoint him as co-class representative alongside Mr. Christiansen. Dkt. 117, at 1. And in Mr. Christiansen's Opposition to Defendant's Motion to Disqualify filed only weeks later, Kaplan Fox argued that "[i]f Mr. Christiansen were to be disqualified, Mr. Ayoub's substitution as lead plaintiff would be in the best interest of the class." Dkt. 130, at 7.

Unlike the cases cited by Mr. Christiansen in his Opposition to Defendant's Motion to Disqualify, Mr. Ayoub's addition—or substitution—as class representative would serve no remedial function, such as ensuring the class would be represented by plaintiffs collectively

2

possessing standing to sue on every claim. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 74-82 (2d Cir. 2004) (rejecting defendants' challenge to district court's addition of named plaintiffs to "ensure[] that … there are representatives of the Class with claims typical of purchasers of both types of securities"); *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 140 (S.D.N.Y. 2007) (holding that, although concerns existed regarding adequate representation of absent class members due to CalPERs purchasing history,  there is nothing to "preclude CalPERS from adding named plaintiffs and class representatives as needed to adequately and effectively represent all of the interests of the purported class"). Rather, Mr. Ayoub's role appears to have been solely to augment Mr. Christiansen's inadequacy to represent the class.

On August 4, 2025, this Court disqualified Mr. Christiansen from serving as lead plaintiff, finding that he "violated class members' trust by divulging confidential settlement information to Darrow, a non-party," that "Christiansen's own conduct belies" the representations in his Opposition, and as such, Christiansen "cannot be relied upon to protect class members' interests in protecting confidential communications moving forward." Dkt. 143, at 5. The Court further found that "the contents of Christiansen's communications with Darrow and with this Court suggest that he is fixated on matters that are irrelevant to this case—specifically, his 'Columbine Commission ….'". *Id.* at 5-6.

Only after exhausting every possible avenue to circumvent the lead plaintiff process, Mr. Ayoub has moved to be appointed lead plaintiff based on his ability "to take an active role overseeing counsel and serv[e] the best interest of the Class." Dkt. 153, at 1. The declaration submitted with his Motion is silent in regards to his previous decision to serve as co-representative with Mr. Christiansen, merely stating that Mr. Ayoub had "sought to be appointed a class representative for the proposed Class," and "understand[s] that the Court has disqualified Steven

Christiansen as the Court-appointed lead plaintiff and has reopened the lead plaintiff appointment process." *See* Dkt. 154-2.

Mr. Ayoub's moving side-by-side with Mr. Christiansen actually raises additional questions calling into question Mr. Ayoub's adequacy. Did he understand why he was jointly moving with Mr. Christiansen? Did he inquire as to why he was being added as a co-class representative? Did he have a conversation with Mr. Christiansen to discuss them being co-class representatives? If Mr. Ayoub asked these relevant questions, received full disclosure, and still decided to move together with Mr. Christiansen, it raises serious questions about his adequacy to represent the class. In contrast, if Mr. Ayoub asked no questions at all, never spoke to Mr. Christiansen, and just lent his name to a being a co-lead plaintiff, that too is quite troubling and undermines his adequacy.

Mr. Ayoub's purported interest in "serving the best interests of the class" would have been better demonstrated by refraining from seeking to serve alongside Mr. Christiansen—a class representative whose conduct he knew, or should have known, was contrary to the Class's interests—and instead waiting until the Court reopened the lead plaintiff process.

Moreover, to the extent Mr. Ayoub's Motion rests on Kaplan Fox's "continued role in this case as lead counsel" because such continuity would "promote efficiency and serve the Class's best interest," it effectively prioritizes counsels' role in the litigation over the Class's right to be represented by an adequate lead plaintiff. Dkt. 175, at 2. This Court has already noted that it will not "simply assume that lead counsel's choice of substitute lead plaintiff is the most adequate plaintiff." Dkt. 143, at 7 (quoting *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 326 (S.D.N.Y. 2012)); *see also In re NYSE Specialists*, 240 F.R.D. at 132-33

(the PSLRA was enacted "to address perceived abuses in securities fraud class actions …. Specifically, … to prevent 'lawyer-driven' litigation").

As detailed in his initial Memorandum of Law in Support of his Motion and in Opposition to Mr. Ayoub's motion, Mr. Dunkleberger has indisputably put forth the requisite "preliminary showing" of typicality and adequacy and is not aware of any unique defenses that Defendants could raise against him. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); Dkt. 162, at 7-10, Dkt. 172, at 1-3.

Reflecting Mr. Dunkleberger's unassailable adequacy and typicality, Mr. Ayoub's only basis for opposing Mr. Dunkleberger's motion is that he sustained the greater losses. *See* Dkt. 175, at 2. However, the language of the PSLRA is clear: the presumption that the movant with the largest financial interest is conditional on that movant's satisfaction of Rule 23's requirements. *See Samit v. CBS Corp.*, 2018 WL 11224303, at *1 (S.D.N.Y. Nov. 30, 2018) (Caproni, J.). Based on facts that are a matter of judicial record, Mr. Dunkleberger has put forward extensive proof that Mr. Ayoub does not satisfy Rule 23's adequacy requirement. As such, Mr. Dunkleberger is the most adequate plaintiff.

## III.    CONCLUSION

For the foregoing reasons, Mr. Dunkleberger respectfully requests that the Court: (1) appoint Mr. Dunkleberger as Lead Plaintiff; and (2) approve his selection of Block & Leviton LLP as Lead Counsel.

DATED: October 21, 2025                         Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
Jacob A. Walker (*pro hac vice* forthcoming)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110

5

(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com

*Counsel for Plaintiff*

<u>COMPLIANCE WITH L.C.R. 7.1(C)</u>

This memorandum of law contains 1,432 words, which is in compliance with L.C.R. 7.1(c).

This memorandum also complies with the page limit requirements of Your Honor's Order dated September 29, 2025, Dkt.. 167.

<u>*/s/ Jeffrey C. Block*</u>
Jeffrey C. Block

6